Opinion for the Court filed by Circuit Judge GINSBURG.
 

 GINSBURG, Circuit Judge:
 

 Margot Rendall-Speranza, an employee of the International Finance Corporation (which is a subsidiary of the World Bank) sued her supervisor, Edward A. Nassim, alleging battery and intentional infliction of emotional distress. During the pre-trial proceedings in the district court, Rendall-Speranza moved to amend her complaint in order to add the IFC as a defendant. Although the limitation period had run when Rendall-Speranza moved to add the IFC as a defendant, the district court allowed the amendment, holding that Rendall-Speranza’s failure to name the IFC as a defendant in her first complaint was due to a “mistake of identity.” The district court then denied each defendant’s motion to dismiss., We reverse.
 

 I. Background
 

 For the purposes of this appeal we take the facts to be as alleged in the complaint. From 1992 to 1995 Rendall-Speranza worked as an investment officer at the IFC; Nassim was her supervisor. According to Rendall-Speranza, Nassim tried on several occasions to take indecent liberties with her. Rendall-Speranza rebuffed his every advance and protested whenever he tried to kiss her or to touch her inappropriately. Eventually, Ren-dall-Speranza reported Nassim’s behavior to officials of the World Bank; .that was in the early Summer of 1994. The events giving rise to this suit occurred on the evening of August 25, 1994 when, in the offices of the World Bank, Nassim allegedly grabbed Ren-dall-Speranza by the wrist, twisted her arm painfully behind her back, and kicked her in the shin.
 

 On August 24, 1995 Rendall-Speranza sued Nassim in the Superior Court of the District of Columbia. She alleged separate counts of sexual harassment, assault and battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and simple negligence. ■ Nassim removed the suit to federal district court, whereupon Rendall-Speranza amended her complaint to allege only assault and battery and intentional infliction of emotional distress. When Nassim moved to dismiss Ren-dall-Speranza’s amended complaint, the IFC filed an
 
 amicus cuñas
 
 brief stating that Nassim’s conduct op the evening of August 25, 1994 was appropriate under IFC policy because he was preventing Rendall-Speran-za from stealing IFC files when he restrained and allegedly kicked her. Rendall-Speranza then moved for leave to file a further amended complaint adding the IFC as a defendant on the batteiy count. The district court granted Rendall-Speranza’s motion, and the IFC promptly filed its own motion to dismiss.
 

 The district court denied both defendants’ motions to dismiss. The court first held that although Rendall-Speranza did not add the IFC as a defendant until after the applicable limitation period had run, her amended complaint “relates back,” pursuant to Federal Rule of Civil Procedure 15(e), to the date upon which the original complaint was filed because her failure to name the IFC in the original complaint was due to “a mistake concerning the identity of the proper party” to sue. The court also rejected the IFC’s contention that Rendall-Speranza’s exclusive remedy lay in the IFC’s internal employee grievance procedure.
 

 The district court then rejected the IFC’s claim to immunity under the International Organizations Immunities Act, 22 U.S.C. §§ 288-288j (IOIA), which grants to international organizations in the United States “the same immunity from suit, and every form of judicial process as is enjoyed by foreign governments.” 22 U.S.C. § 288a(b). In 1945, when the IOIA was first passed, foreign governments enjoyed absolute immunity. In 1976, however, the Congress passed the Foreign Sovereign Immunities Act, 28 U.S.C.
 
 *-668
 
 §§ 1602 et seq. (FSIA), which creates certain exceptions to the immunity of foreign governments. We have not heretofore found it necessary to decide whether the exceptions contained in the FSIA likewise limit the immunity extended to international organizations under the IOIA
 
 See, e.g., Broadbent v. Organization of American States,
 
 628 F.2d 27, 32-33 (D.C.Cir.1980) (no need to decide issue because international organization immune from liability for alleged harm even under FSIA). The district court held conditionally that if the FSIA does circumscribe the immunity available under the IOIA, then the IFC is not immune from liability for Nassim’s tortious conduct because that conduct did not involve the exercise of discretion.
 
 See
 
 28 U.S.C. § 1605(a)(5) (no sovereign immunity “in any ease ... in which money damages are sought for ... damage ... caused by [a] tortious act or omission ... except this paragraph shall not apply to — (A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused”). The district court therefore found it necessary to decide whether the exceptions found in the FSIA do indeed limit the immunity of international organizations under the IOIA; it held that they do and accordingly denied the IFC’s motion to dismiss.
 

 For essentially the same reason grounded in the FSIA the district court rejected Nas-sim’s claim to immunity from liability for the alleged battery. Turning to Rendall-Speran-za’s claim against Nassim for intentional infliction of emotional distress, the court determined that liability for all the acts alleged by Rendall-Speranza except the battery of August 25, 1994 would ordinarily be barred by the District of Columbia’s one-year statute of limitations for a claim based upon a battery. The court held, however, that because the last alleged act did occur within the limitation period, Rendall-Speranza could pursue redress for the entire course of conduct alleged on the ground that it constitutes a “continuing tort.” The court also rejected Nassim’s contention that the acts alleged did not as a matter of law constitute the intentional infliction of emotional distress.
 

 Both the IFC and Nassim filed interlocutory appeals contesting the district court’s rejection of their claims of immunity from suit.
 
 See Foremost-McKesson v. Islamic Republic of Iran,
 
 905 F.2d 438, 443 (D.C.Cir. 1990) (decision rejecting claim of foreign sovereign immunity immediately appealable). In addition, the appellants urge this court to exercise pendent jurisdiction over those issues with respect to which they do not claim any immunity,
 
 viz.,
 
 the statute of limitations defenses.
 

 II. Analysis
 

 We address first (in Part II.A) the issue of pendent jurisdiction, which we decide to exercise because, if the appellants have a valid defense in the statute of limitations, then the court can both economize on judicial resources and avoid resolving their claims of immunity. We then hold (in Part II.B) that Rendall-Speranza’s claim against the IFC for battery does not relate back to the date of her original complaint; accordingly, that claim is barred by the statute of limitations. Finally, we take up (in Part II.C) Rendall-Speranza’s claims against Nassim for battery and for intentional infliction of emotional distress. We hold that Nassim is immune from liability for battery because he was acting within the scope of his employment during the alleged battery, and that the claim for emotional distress is also barred by the statute of limitations.
 

 A Pendent Appellate Jurisdiction
 

 Both defendants argue that we should, and Rendall-Speranza argues that we should not, exercise pendent jurisdiction over the issues in this cáse that do not involve the defendants’ claims of immunity. We do not ordinarily engage in interlocutory review of a district court’s decision to deny a motion to dismiss because a verdict rendered after trial could make any review unnecessary. Where, however, a defendant raises and the district court rejects immunity as a defense, the defendant enjoys the right of immediate appeal. The reason is clear enough: Immunity protects the defendant not only from liability upon the merits of the claim against it but also from the burden of standing trial in the
 
 *-667
 
 first place.
 
 Foremost-McKesson,
 
 905 F.2d at 443.
 

 Of course, a district court’s decision may involve a mix of issues, some immediately appealable and others not. Considerations of judicial economy may then impel the court to consider the whole case at once by exercising “pendent appellate jurisdiction” over the otherwise unappealable aspects of the district court’s order(s). We do so, however, only when “substantial considerations of fairness or efficiency demand it.”
 
 Gilda Marx, Inc. v. Wildwood Exercise, Inc.,
 
 85 F.3d 675, 679 (D.C.Cir.1996). In the cited case we set forth a number of factors to be considered in deciding whether to exercise pendent jurisdiction. If the order (or part thereof) that is not independently appealable is “inextricably intertwined” with the order (or part thereof) that is appealable,
 
 see Swint v. Chambers County Com’n,
 
 514 U.S. 35,-, 115 S.Ct. 1203, 1212, 131 L.Ed.2d 60 (1995), or if “pendent review will likely terminate the entire case, sparing both this court and the district court from further proceedings and giving the parties a speedy resolution,”
 
 Gilda Marx,
 
 85 F.3d at 679, then the exercise of pendent jurisdiction is favored. On the other hand, the exercise of pendent jurisdiction is disfavored if the court lacks the benefit of an adequate record,
 
 see Swint,
 
 514 U.S. at-n. 5, 115 S.Ct. at 1210 n. 5, or if the issue might well be rendered moot or altered by further proceedings in the district court.
 
 Gilda Marx,
 
 85 F.3d at 679. Nor should the court exercise its pendent jurisdiction over “numerous or complex orders that are not independently appealable” merely because a relatively insignificant order is appealable.
 
 Id.
 

 Pursuant to these principles we should and we shall exercise pendent jurisdiction over the statute of limitations defense that both the IFC and Nassim raise. First, the statute of limitations defense cannot be mooted or altered by further proceedings in the district court. By addressing the limitation issue now, therefore, this court may be able to dispose of the entire case and thus to economize on the use of judicial resources. In addition, the issues raised by the IFC’s various claims of immunity, and particularly the issue of the effect (if any) that the FSIA has upon the IOIA, are both difficult and, because of their implications for the foreign relations of the United States, delicate. If they can be avoided merely by advancing the time at which the court reaches its decision upon the statute of limitation defense, then they should be. Therefore, though we exercise pendent appellate jurisdiction “sparingly,”
 
 Gilda Marx,
 
 85 F.3d at 678, we think that in this case the statute of limitations, a threshold issue in the district court, is best dealt with at the threshold of this interlocutory appeal.
 

 B. The Claim against the IFC for Battery
 

 Whether the district court properly excused Rendall-Speranza’s failure to add the IFC as a defendant until after the statute of limitations had run depends upon the meaning of “a mistake concerning the identity of the proper party” in Rule 15(c)(3)(B) of the Federal Rules of Civil Procedure. Rule 15(c)(3) provides:
 

 An amendment of a pleading relates back to the date of the original pleading when ... (3) the amendment changes the party or the naming of the party against whom a claim is asserted ... and ... the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.
 

 Rendall-Speranza did not name the IFC as a defendant until after it had filed its
 
 amicus curiae
 
 brief in her case against Nas-sim because, she says, until the IFC stated in its brief that Nassim was acting within the scope of his duties at the time of the August 25, 1994 incident she had no reason to think that the IFC might be liable for the battery. According to Rendall-Speranza, a plaintiffs mistaken belief that A is liable for a tort against her when in fact B is the responsible party is “a mistake concerning the identity of the proper party” within the contemplation of Rule 15(c) even where, as here, the mistake
 
 *-666
 
 is one of legal judgment rather than a mere misnomer.
 

 Rendall-Speranza’s broad interpretation of “a mistake of identity” does not serve the evident purpose of the rule, which is to avoid the harsh consequences of a mistake that is neither prejudicial nor a surprise to the misnamed party. A potential defendant who has not been named in a lawsuit by the time the statute of limitations has run is entitled to repose — unless it is or should be apparent to that person that he is the beneficiary of a mere slip of the pen, as it were. Under Rendall-Speranza’s approach, however, one would not be sure that he could rely upon the repose promised by the statute of limitations until all litigation was over. We are reluctant to adopt so expansive an interpretation, with its concomitant harvest of uncertainty, absent some support, if not in the rule itself, then in the Advisory Committee Notes to the Federal Rules, or in the cases of our sister circuits, or in the policies behind either the rule or the statute of limitations. Far from supporting Rendall-Speranza’s interpretation, however, all these sources support a straightforward reading of the phrase “mistake of identity.”
 

 The Advisory Committee Notes (1991) state that Rule 15(c) deals with “the problem of a misnamed defendant.”
 
 Cf. Barrow v. Wethersfield Police Dep't,
 
 66 F.3d 466, 469 (2d Cir.1995) (“This commentary implies that the rule is meant to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the result of an error, such as misnomer or misidentifieation.”),
 
 modified,
 
 74 F.3d 1366 (1996). The committee particularly emphasized, in its Notes to the 1966 amendment the importance of “relation back” in suits against the government in which the complaint may name, for example, a non-existent agency or a person who is no longer the relevant government official.
 
 See Donald v. Cook County Sheriff’s Dept.,
 
 95 F.3d 548, 560 (7th Cir.1996) (“The commentary to Rule 15(e) clearly indicates that the rule is intended to be a means for correcting the mistakes of plaintiffs suing official bodies in determining which party is the proper defendant.”). Nothing in the Rule or in the Notes indicates that the provision applies to a plaintiff who was fully aware of the potential defendant’s identity but not of its responsibility for the harm alleged. In fact, the Notes speak of a defendant that may properly be added under Rule 15(c) as an “intended defendant,” and of an amendment pursuant to the Rule as “a name-correcting amendment.”
 

 Rendall-Speranza has never claimed that she intended to name the IFC as a defendant when first she filed suit. On the contrary, she claims that she did not name the IFC as a defendant because she did not think the IFC might be liable for her injury. In an analogous situation, the Ninth Circuit held that a plaintiff that is mistaken about which of two known parties is the proper successor-in-interest of a company allegedly liable to the plaintiff may not use Rule 15(c) to correct its mistake and thereby avoid the statute of limitations.
 
 See Louisiana-Pacific Corp. v. ASARCO, Inc.,
 
 5 F.3d 431, 434 (1993). As the court of appeals (quoting the district court) explained:
 

 [The plaintiff] knew who those parties were and made a mistake in who it determined it ought to sue under the circumstances. The mistake under Rule 15(c) has to be as to identity, and there was no mistake as to the identity of [the buyer].
 

 Likewise, in
 
 Lundy v. Adamar of New Jersey, Inc.,
 
 34 F.3d 1173, 1183 (1994), the Third Circuit held that “[w]here there is a basis for the plaintiff to assert liability against the party or parties named in a complaint and there is no reason for another party to believe that the plaintiff did anything other than make a deliberate choice between- potential defendants,” the plaintiff cannot revive her claim by relying upon Rule 15(c).
 
 See also Wilson v. U.S. Government,
 
 23 F.3d 559, 563 (1st Cir.1994) (amended complaint adding United States as defendant does not relate back where seaman learned after limitation period had run that United States, not his employer, owned ship on which he was injured).
 

 Our understanding that an error of judgment about whether an employer is liable for the act of its employee is not “a mistake” within the intendment of Rule 15(e) is buttressed also by cases in which the court did
 
 *-665
 
 not allow a plaintiff who had sued a government officer in his official capacity to add the officer as a defendant in his individual capacity.
 
 See Lovelace v. O’Hara,
 
 985 F.2d 847, 850-51 (6th Cir.1993);
 
 Colvin v. McDougall,
 
 62 F.3d 1316, 1318-19 (11th Cir.1995);
 
 cf. Brown v. Georgia Dept. of Revenue,
 
 881 F.2d 1018, 1023 & n. 14 (11th Cir.1989) (allowing plaintiff who had sued only State to add state officials in their official capacity in order to avoid bar of Eleventh Amendment, but noting that “[i]t would be an entirely different case if the[y] were sued in their individual capacities for damages”);
 
 Donald,
 
 95 F.3d at 557 (allowing pro se prisoner to substitute sheriffs department officials as defendants in § 1983 action where department not liable because no official policy or custom underlay injury).
 

 Rendall-Speranza alleged that she was injured in her workplace by a fellow servant. In fact, she submitted to the IFC a Workers’ Compensation Claim Reporting Sheet stating as much. Although Rendall-Speranza claims that she did not realize that the IFC might be liable for Nassim’s action until the IFC filed its
 
 amicus curiae
 
 brief in his support, from her own account of the August 24,1995 incident she must be deemed to have been on notice of the IFC’s potential liability. Nothing prevented Rendall-Speranza from naming both the IFC and Nassim as defendants and pleading alternative theories of liability. In the adversarial system of litigation the plaintiff is responsible for determining who is liable for her injury and for doing so before the statute of limitations runs out; if she later discovers another possible defendant, she may not, merely by invoking Rule 15(c), avoid the consequences of her earlier oversight. We hold, therefore, that the plaintiffs attempt belatedly to name the IFC as a defendant because she had earlier failed to appreciate that the IFC might be liable is not an amendment based upon “a mistake of identity” so as to relate back to the date of the original complaint.
 

 We are also mindful that under Rule 15(c) an amended complaint does not relate back to the date of the original complaint unless the potential defendant knew or should have known that the plaintiff failed to name it originally only because of a mistake concerning its identity. Here, the IFC had no reason to think that Rendall-Speranza had failed to sue the IFC by mistake: Not since the IOIA was enacted in 1945, nor indeed since 1976 when the immunity therein conferred was arguably limited by the FSIA, does a court appear to have held an international organization liable in a suit brought by one of its own employees. Therefore, the IFC had good reason to believe that Ren-dall-Speranza did not name it as a defendant because doing so would have been futile.
 

 C. The Claims against Nassim
 

 Rendall-Speranza brought claims of battery and intentional infliction of emotional distress against Nassim. The alleged battery occurred on August 25, 1994, but the claim for emotional distress rests also upon the earlier incidents of unwelcome physical contact alleged in the complaint.
 

 1. Battery
 

 The district court analyzed Nassim’s immunity under § 2(b) of the IOIA, 22 U.S.C. § 288a(b), which states, in pertinent part, that “[international organizations, their property and their assets, wherever located, and by whomsoever held, shall enjoy the same immunity from suit and every form of judicial process as .is. enjoyed by foreign governments.” Nassim, however, is not an international organization; he is an employee of an international organization. As such, the provision of the IOIA relevant to him is clearly not § 2(b) but § 7(b), 22 U.S.C. § 288d(b): “officers and employees of [international] organizations shall be immune from suit and legal process relating to acts performed by them in their official capacity and falling within their functions as such representatives, officers, or employees.”
 

 Rendall-Speranza does not deny that the district court applied the wrong section of the IOIA to Nassim. Nor can she deny that Nassim was acting in his official capacity during the incident of August 25, for she alleged as much in her second amended complaint when she stated that the IFC “has authorized such assaults as within the scope of employment of employees such as ...
 
 *-664
 
 Nassim.” Having thus opened the door in order to draw in the IFC, Rendall-Speranza let Nassim slip out. Even aside from the concession in the complaint, however, the IFC has stated unequivocally that if Nassim battered Rendall-Speranza on the evening of August 25,1994, then he did so in his official capacity; and the district court accepted, for the purpose of deciding the motions to dismiss, the defendant’s “admission” that when the alleged assault occurred Nassim was acting within the scope of his employment “by taking steps to protect the employee’s offices from trespass and to protect the employee’s files from tampering or theft.” Rendall-Speranza has not questioned the court’s acceptance of this admission, which is consistent with her second amended complaint. Accordingly; it is clear that Nassim is immune from suit for the alleged battery of August 25,1994.
 

 2. Intentional Infliction of Emotional Distress
 

 Because there is no specific statute limiting the time for filing a claim for intentional infliction of emotional distress in the District of Columbia, the D.C. Court of Appeals has held that an independent action for intentional infliction of emotional distress is subject to the District’s three-year residual limitation period, D.C.Code § 12-301(8).
 
 See Saunders v. Nemati,
 
 580 A.2d 660 (1990). However, a claim for emotional distress that is “intertwined with any of the causes of action for which a period of limitation is specifically provided,” including assault and battery, is subject to the limitation period for the intertwined claim.
 
 Saunders,
 
 580 A.2d
 
 at
 
 664-65;
 
 see Hunter v. District of Columbia,
 
 943 F.2d 69, 72 (D.C.Cir.1991) (where complaint does not allege facts showing that defendant intentionally caused emotional distress by conduct independent of assault and battery, applicable limitation period is one year provided for assault and battery).
 

 Rendall-Speranza’s claim of intentional infliction of emotional distress is clearly “intertwined with” — indeed it depends utterly upon — -her allegations of battery. The complaint states generally that Nassim subjected Rendall-Speranza to “pervasive unwelcome, harassing, demeaning and humiliating language and physical contacts.” Although a complaint based solely upon demeaning and humiliating language (as was the claim for emotional distress in Saunders) would be independent of any battery, that is not the nature of Rendall-Speranza’s claim. Every incident that, Rendall-Speranza alleges, contributed to her emotional distress involved an assault and battery. Accordingly, the district court did not err in holding that the one-year period of limitation for assault and battery applies to Rendall-Speranza’s claim for intentional infliction of emotional distress.
 

 The district court then rescued Rendall-Speranza’s claim, however, by treating the various acts of battery she alleged as one continuous tort of intentional infliction of emotional distress; because the last act in that series occurred within the limitation period (on August 25, 1994), the district court held that Rendall-Speranza’s claim is not time-barred after all. Nassim argues, on the other hand, that an act for which he is immune under § 7(b) of the IOIA — a provision that was not even arguably affected by the FSIA — cannot be the hook by which he is snagged and held hable for a continuing tort for which he is not immune.
 

 If an act for which a defendant is immune from suit could save an otherwise time-barred claim from which he is not immune, then the immunity would be but a paper shield. No person or entity so protected could know whether its supposedly immune act will in fact occasion (or aggravate) its liability for a non-immune act. Accordingly, we hold that when immunity protects a defendant from liability for an allegedly tor-tious act, and that act is the only act that occurred within the applicable limitation period, the statute of limitations bars a claim against the defendant.
 
 Cf. Neufeld v. Neufeld,
 
 910 F.Supp. 977, 983 (S.D.N.Y.1996) (complaint may not rely upon “recent yet non-actionable conduct in an attempt to resurrect proper claims that would otherwise be barred by statute of limitations”); S.W.
 
 Daniel, Inc. v. Urrea,
 
 715 F.Supp. 1082, 1087 (N.D.Ga.1989) (cause of action can not accrue based upon allegedly false testimony of gov-
 
 *-663
 
 emment agent who is absolutely immune from liability for his testimony).
 

 III. Conclusion
 

 The plaintiffs claim against the IFC is barred by the statute of limitations, as is her claim against Nassim for intentional infliction of emotional distress. The plaintiffs claim against Nassim for battery is barred by Nas-sim’s immunity under § 288d(b) of the IOIA. Therefore, the decisions of the district court denying the defendants’ motions to dismiss are
 

 Reversed.