LaVerne F. **SCHIESZLER**, Personal Representative of the Estate of Michael W. Frentzel, Deceased, Plaintiff,

v.

**FERRUM COLLEGE** and David Newcombe, Defendants.

No. 7:02–CV–00131.

United States District Court, W.D. Virginia, Roanoke Division.

Dec. 2, 2002.

---

Arthur P. Strickland, P.C., Roanoke, VA, Daniel R. Madock, Russell M. Kofoed, Barlow, Kobata & Denis, Chicago, IL, for Plaintiff.

Joseph Aubrey Matthews, Jr., Jonnie L. Speight, Johnson, Ayers & Matthews, Roanoke, VA, John Lester Cooley, Jr., Wooten & Hart, P.C., Roanoke, VA, for Defendants.

### MEMORANDUM OPINION

KISER, Senior District Judge.

In this case, plaintiff LaVerne Schieszler moves for leave to amend her complaint to add three defendants, one of whom she previously dismissed from the case, and to assert a claim for punitive damages. The parties have briefed the issues fully and appeared for oral argument on November 22, 2002. The motion is therefore ripe for decision. For the reasons stated below, I grant plaintiff's motion to amend her com-

plaint with respect to the assertion of a claim for punitive damages. I deny plaintiff's motion with respect to the addition of John Young and Piedmont Community Services as defendants and the reinstatement of Gary House as a defendant.

## BACKGROUND AND PROCEDURAL HISTORY

This case arises from a tragic incident in which a college student took his own life. According to the complaint, the facts are as follows: In the fall of 1999, Michael Frentzel, an Illinois resident, was a freshman enrolled at defendant Ferrum College ("Ferrum"). Due to disciplinary issues during Frentzel's first semester, Ferrum required him to comply with certain counseling requirements in order to enroll for second semester classes. To satisfy these requirements, Frentzel attended disciplinary workshops conducted by defendant David Newcombe, the Dean of Student Affairs at Ferrum, as well as anger management counseling conducted by Gary House, an employee of Piedmont Community Services (Piedmont), which provided counseling services pursuant to a contract with Ferrum.

On February 21, 2000, Frentzel and his girlfriend, Crystal,[1] had an argument in Frentzel's dormitory room in Susannah Wesley Hall at Ferrum. The campus police and the dormitory resident assistant, Odessa Holley, responded and ordered Crystal to leave Frentzel's room. Crystal and other students communicated to the campus police and Holley that Frentzel had threatened to harm himself and may have tried to hang himself. The campus police and Holley went to Frentzel's room and found the door locked. Frentzel eventually let them in but stated that he wanted to be left alone because he had something to do. Frentzel indicated that

bruises on his head and neck were self-inflicted.

The campus police and Holley then called Newcombe and informed him of the incident and Frentzel's statements of intent to harm himself. Newcombe responded to the scene, met with Frentzel, and had Frentzel sign a written statement (the "No–Harm Agreement") in which Frentzel promised not to hurt himself. Newcombe or another Ferrum employee then called Young, a counselor with Piedmont, and he too responded to the scene.

At this time, Newcombe and Young left Frentzel alone in his room and went to another floor of the dormitory to speak with Crystal. Nobody stayed behind with Frentzel. Crystal informed Newcombe and Young that Frentzel previously had attempted to hang himself with a belt and a hanger. She also stated that she believed Frentzel would attempt to harm himself again. During this conversation, Frentzel sent an email to an unnamed person stating that he was "sorry" and that the recipient should "tell Crystal that he [Frentzel] loved her." Crystal read this email and communicated the contents to Newcombe and Young. Despite this knowledge, both Newcombe and Young remained with Crystal and prevented her from returning to Frentzel's room. Newcombe, Young, and others later returned to Frentzel's room and found that he had attempted to hang himself with a belt once again. Emergency measures were provided, but Frentzel eventually was pronounced dead on February 23, 2000.

Plaintiff Schieszler filed her complaint on February 22, 2002. She sought damages for wrongful death under Va.Code § 8.01–52 against Ferrum, Newcombe, House, and Holley. The defendants moved to dismiss, and plaintiff moved to

---

1. Crystal's last name is not identified any-     where in the pleadings.

amend her complaint. Plaintiff and House agreed to a stipulated dismissal of House without prejudice and with leave to reinstate him as a defendant at a later date without assertion by House of a statute of limitations defense.[2] By order and memorandum opinion dated July 15, 2002, I granted the motion to dismiss with respect to Holley, denied the motion to dismiss with respect to Ferrum and Newcombe, and granted plaintiff's motion for leave to file an amended complaint.[3]

Now, plaintiff seeks to file a second amended complaint. In this pleading, plaintiff seeks to reinstate House as a defendant. She also seeks to add as defendants Young and Piedmont, who have never been parties to this action to date. Finally, she seeks to add a claim for punitive damages against all defendants.[4]

## DISCUSSION

Plaintiff's motion to amend is governed by Fed.R.Civ.P. 15. Because responsive pleadings have been filed and because plaintiff already has amended her complaint once, plaintiff may not amend her complaint without leave of court. Fed. R.Civ.P. 15(a). Leave to amend "shall be freely given when justice so requires." *Id.* Nevertheless, because the statute of limitations on plaintiff's wrongful death claim

expired on February 23, 2002, *see* Va. Code. § 8.01–243(A) (providing two-year statute of limitations for injuries to person, regardless of theory of liability), all of plaintiff's proposed amendments must relate back to the time plaintiff filed her original complaint in order to survive a statute of limitations defense.

### 1. John Young and Piedmont Community Services

■ The Federal Rules of Civil Procedure provide that an amendment altering the parties relates back to the time of the original complaint if:

the amendment changes the party or the naming of the party against whom a claim is asserted ... and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c)(3). Plaintiff argues that she made two mistakes: first, Young,

---

**2.** Pursuant to the stipulation, I ordered House dismissed without prejudice on June 18, 2002 [No. 18–1].

**3.** Plaintiff attached an Amended Complaint as Exhibit A to her first motion to amend [No. 11–1], dated May 31, 2002, but this document was never accepted and docketed because it predated the stipulated dismissal of House as well as my order on the motion to dismiss. Plaintiff's amended complaint was entitled "Second Amended Complaint" when, in reality, it was her first amended complaint. Thus, the pleading that plaintiff now seeks to file, attached as Exhibit E to her Motion to Re–Add Defendant and Amend Complaint [No. 27–1], is also, and now accurately, entitled "Second Amended Complaint." For ease of

reference, I shall refer to plaintiff's original complaint as the Complaint, plaintiff's unfiled document as the May 31 Proposed Complaint, the actual filed document [No. 22–1] as the July 25 Amended Complaint, and the document attached to the instant motion as the Proposed Second Amended Complaint.

**4.** Newcombe and Ferrum do not oppose the addition of House, Young, and Piedmont as parties; their sole objection is to the addition of the punitive damages claim. House, Young, and Piedmont spent virtually all of their oral and brief arguments opposing their addition as parties, but they did adopt and incorporate the arguments of Newcombe and Ferrum by reference on the punitive damages issue.

not House, was present on February 20, 2000; and second, Piedmont, not Ferrum, is the employer of Young and House. Plaintiff asserts that, by virtue of their representation by common counsel, Young and Piedmont had notice of plaintiff's claims at the time House was served and knew that, but for plaintiff's mistake, Young and Piedmont would have been sued at that time. Before I can determine whether plaintiff's amendment meets the elements of Rule 15(c), I must address the important threshold question of whether Rule 15(c) is even available as a vehicle to the plaintiff in this instance.

### A. Addition of New Parties under Rule 15(c)

Young and Piedmont argue that Rule 15(c) only permits amendments that correct mistakes as to existing parties, not amendments that name additional parties. I have found very little relevant case law on this issue within the Fourth Circuit. The only appellate decision directly on point is *Onan v. County of Roanoke*, 52 F.3d 321, 1995 WL 234290 (Apr. 21, 1995) (unpublished). In *Onan*, the plaintiff, a county employee, sued several local officials under Title VII and other statutes. *Id.* at *1. After the expiration of the 90-day statute of limitations under Title VII, the plaintiff moved for leave to amend to add Roanoke County as a defendant. *Id.* The Fourth Circuit concluded that Onan's claim against the county did not relate back because Rule 15(c) did not permit the addition of a new defendant: "Rule 15(c)(3) permits a plaintiff to name a new defendant *in place of* an old one, but does

not permit a plaintiff to name a new defendant *in addition to* the existing ones." *Id.* at *2 (citing *Wilson v. United States Government*, 23 F.3d 559, 563 (1st Cir.1994); *Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir.1993); *In re Kent Holland Die Casting & Plating, Inc.*, 928 F.2d 1448, 1449 (6th Cir.1991); *Jacobson v. McIlwain*, 145 F.R.D. 595, 603 (S.D.Fla.1992); *Jordan v. Tapper*, 143 F.R.D. 567, 573–74 (D.N.J.1992)). Ordinarily citation to unpublished decisions is disfavored in this circuit, but I believe that no other published decision adequately controls this point of law. *See* 4th Cir. R. 36(c) (permitting citation to relevant unpublished decision when counsel serves copy of decision on opposing party and court).

Plaintiff contends that two cases from the Western District of Virginia imply that Rule 15(c) may be used to add a party without dropping another party. The first of these cases, *Fitzpatrick v. Marion Corr. Treatment Ctr.*, No. 1:00cv00127, 2001 WL 1526287 (W.D.Va. Nov.30, 2001) (unpublished), is clearly inapposite. In that case, the incarcerated pro se plaintiff originally named two immune government defendants, then moved to amend his complaint to name individual officers. In contrast to Schieszler's assertion, the *Fitzpatrick* plaintiff attempted to substitute defendants rather than add defendants to the existing slate of parties. *Id.* at *3.[5] In the second of plaintiff's cited cases of implication, *Phillips v. United Fixtures Co.*, 168 F.R.D. 183 (W.D.Va.1996), it appears that the court did permit an amendment naming a component manufacturer in addition

---

**5.** Also notably, Judge Jones denied the *Fitzpatrick* plaintiff's amendment, ruling that the plaintiff's mistake was not one contemplated by the remedy of Rule 15(c). As I discuss below, that is also true in the instant case.

I recognize that the plaintiff in *Fitzpatrick* originally named two defendants, then attempted to amend his complaint to name

three different defendants. Admittedly, under the logic of *Onan*, three defendants could not take the place of two. Regardless, Judge Jones denied the amendment on the grounds that no mistake was made, and I will not attribute the weight of implication to *Fitzpatrick* that plaintiff requests.

to the existing defendant, the finished product manufacturer. The Northern District of Alabama permitted the amended pleading, then transferred the case to this district, where the magistrate judge was confronted with a summary judgment motion on statute of limitations grounds by the component manufacturer. *Id.* at 185–86. It does not appear that the parties argued or the court considered this precise question of law—whether Rule 15(c) permits the addition of a party to relate back—and the *Phillips* decision does not refer to *Onan* at all.[6] I believe that, given the Fourth Circuit's decision (albeit unpublished) in *Onan* and given the decisions from sister circuits that agree with the holding in *Onan,* the Fourth Circuit's reading of Rule 15(c) must prevail.

The plain text of the rule supports the Fourth Circuit's reading. Rule 15(c)(3) permits an amendment to relate back when it "changes the party or the naming of the party." The word "change" implies an alteration to the parties in the existing set, not an addition to the set. In this case, plaintiff has never suggested any intent to drop Ferrum or Newcombe as parties. Plaintiff wants to hold Young and Piedmont liable for Frentzel's death in addition to Ferrum and Newcombe, not in place of them. In addition to refuting the intent to "change" parties, this also bears on the related issue of whether plaintiff made a "mistake" regarding the defendants in this action.

*B. Meaning of "Mistake" under Rule 15*

Plaintiff's desire to add Young and Piedmont to the original parties debunks any notion that plaintiff made a "mistake" contemplated by Rule 15. Numerous courts

have indicated that the "mistake" referred to in the rule does not allow amendment when "the mistake is one of legal judgment rather than a mere misnomer." *Rendall–Speranza v. Nassim,* 107 F.3d 913, 917–18 (D.C.Cir.1997). In *Rendall–Speranza,* the plaintiff sued his supervisor for battery and intentional infliction of emotional distress, and then moved to add his employer after the expiration of the statute of limitations. *Id.* at 915. The plaintiff argued that her failure to realize that the employer might be liable constituted a mistake under Rule 15(c). The D.C. Circuit disagreed:

> A potential defendant who has not been named in a lawsuit by the time the statute of limitations had run is entitled to repose—unless it is or should be apparent to that person that he is the beneficiary of a mere slip of the pen, as it were. Under Rendall–Speranza's approach, however, one would not be sure that he could rely on the repose promised by the statute of limitations until all litigation was over.

*Id.* at 918. The court examined the 1991 Advisory Committee Notes, which supported the interpretation of Rule 15(c) as a "name-correcting" devise. *Id.* "Nothing in the Rule or in the Notes indicates that the provision applies to a plaintiff who was fully aware of the potential defendant's identity but not of its responsibility for the harm alleged." *Id.; see also Wilson v. United States Government,* 23 F.3d 559, 563 (1st Cir.1994) ("Wilson fully intended to sue GEGS, he did so, and GEGS turned out to be the wrong party. We have no doubt that Rule 15(c) is not designed to remedy such mistakes.")

---

**6.** In addition to conflicting with *Onan,* the *Phillips* decision also clashes with the decisions discussed below concerning what mistakes are remediable under Rule 15(c). Specifically, the *Phillips* decision permitted an amendment when the plaintiff sued the wrong party, not merely a misnamed party, which conflicts with the Fourth Circuit cases I discuss below in Section 2B.

The Fourth Circuit has agreed with this misnomer-corrective reading of "mistake" in Rule 15(c). *See W. Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1201 (4th Cir.1989) (stating that Rule 15(c) permits relation back in case of mistake concerning identity of proper party, not lack of knowledge of proper party) (quoting *Wood v. Worachek*, 618 F.2d 1225, 1230 (7th Cir. 1980)). In *Rennie v. Omniflight Helicopters, Inc.*, 165 F.3d 19, 1998 WL 743678, *2 (4th Cir. Oct.23, 1998) (unpublished), the court cited *Bechtel* and ruled that the plaintiff's naming of a successor corporation instead of the proper corporate defendant did not constitute a mistake remediable by Rule 15(c)(3):

> There is relation back where a plaintiff has misnamed the party the plaintiff actually intended to sue who is already a part of the lawsuit, but not where the plaintiff was simply wrong about who the plaintiff wanted to sue. In this case, Plaintiffs made an actual mistake as to the party they wanted to sue.... Plaintiffs were wrong as to who was the proper party. The remedy provided by Rule 15 does not cover this mistake.

*Id.*

The obstacle in this case is not Rule 15 by itself, but rather the statute of limitations, which Rule 15 cannot circumvent except in the narrow circumstances defined in Rule 15(c). Plaintiff filed this action only one day before the expiration of the statute of limitations, which means that she left herself only one day as a margin for error in investigating the incident and determining who the proper parties were. This is not an uncommon occurrence. *See Bruce v. Smith*, 581 F.Supp. 902, 909 (W.D.Va.1984) (noting that plaintiff filed action only 23 days prior to expiration of statute of limitations even though plaintiff had counsel for several

months prior to filing); *Phillip v. Sam Finley, Inc.*, 270 F.Supp. 292, 294 (W.D.Va.1967) (noting that plaintiff filed action on day prior to expiration of statute of limitations). The plaintiff bears the burden of finding the proper defendant, though. *Bruce*, 581 F.Supp. at 906. Young and Piedmont have produced documentation of an e-mail exchange between Ferrum and Schieszler.[7] On March 15, 2000, less than a month after her nephew's death, Schieszler requested information from Ferrum regarding the names of persons having information concerning the incident. Ferrum's reply names several individuals, including both Gary House and John Young, whom the e-mail lists under the heading "Piedmont Counseling Services". The printout from this reply does not show a date, but plaintiff has not suggested that the reply was unduly delayed in such a way as to obstruct her investigation before the statute of limitations expired. I am sympathetic to the obvious difficulties the plaintiff faced in investigating this tragedy in Franklin County, Virginia while she and her lead counsel reside in Chicago, Illinois. Nevertheless, the defendants cannot be blamed for those difficulties, and if they have not been named in an action within the two-year limitations period, they are entitled to repose. *See Keller v. Prince George's County*, 923 F.2d 30, 34 (4th Cir.1991) ("[T]he individuals could reasonably assume that because they were not sued in their individual capacities, Keller had made a conscious decision to proceed solely against the Department."). Accordingly, I deny plaintiff's motion as to Young and Piedmont.

**2. Gary House**

■ House opposes his reinstatement as a defendant on the grounds that plaintiff's

---

7. These e-mails are attached to the Supplemental Memorandum of Law in Opposition to

Plaintiff's Motion for Leave to Add Additional Parties [No. 32–1].

proposed claim against him does not comport with the parties' agreement in the stipulated dismissal. Specifically, House argues that the plaintiff is now attempting to assert a medical malpractice claim against him and that plaintiff seeks to hold House liable for negligence in counseling Frentzel in the weeks prior to his death, rather than on the day of his death as indicated in the original complaint.

At oral argument, counsel for House asserted that House only agreed to be reinstated as a defendant if plaintiff's discovery revealed that House's representations that he was not present on the day of Frentzel's death proved untrue. A May 30, 2002 letter from House's counsel to plaintiff's counsel, included in House's memorandum in opposition to this motion, supports this assertion. The letter alone, however, does not demonstrate the acquiescence of the plaintiff. The only evidence of the actual agreement between the parties is the stipulation itself, which plaintiff attached to her motion to voluntarily dismiss House. The stipulation is succinct: "Plaintiff agrees to dismiss defendant House at this time, without prejudice and with leave to reinstate, and defendant House agrees to waive any defense to the allegations of the claims in the Complaint and/or Amended Complaint based on the Statute of Limitations if he is subsequently added as a defendant." The stipulation speaks in broad terms, and the only limit, if any, is the reference to the allegations of the original complaint and the May 31 Proposed Complaint.

I do not find availing House's argument that plaintiff is now asserting a new "professional negligence" claim. The Complaint, the May 31 Proposed Complaint, and the Proposed Second Amended Complaint all allege that House, while working in his capacity as a counselor toward Frentzel, breached a duty of care that proximately resulted in Frentzel's death. In both cases, the source of the duty, the "special relationship" between House and Frentzel, arose as a result of House's actions as a counselor.

Reading the original complaint, however, the only acts and omissions in question are those that occurred on February 20, 2002. The complaint refers to House's arrival at the dormitory on that date, his knowledge of Frentzel's history, and his leaving Frentzel alone and unsupervised, all of which allegedly constitute House's negligent failure to take adequate precautions to see that Frentzel did not harm himself.[8] *See* Complaint ¶¶ 18–24, 29–32. Plaintiff's proposed amended complaint of May 31, 2002, also speaks exclusively of occurrences on February 20, 2000. *See* May 31 Proposed Complaint ¶¶ 20–28, 31–38. In contrast, plaintiff's proposed Second Amended Complaint identifies House as a counselor who treated Frentzel in the weeks leading up to his death, not the counselor present on the day of his suicide. Plaintiff now asserts that House's conduct in treating Frentzel prior to February 20, 2000 was negligent and proximately caused Frentzel's death. *See* Proposed Second Amended Complaint ¶¶ 17–19, 42–44, 51–52.

Plaintiff argues that the Complaint and the May 31 Proposed Complaint identify House's counseling as a potential source of liability for Frentzel's death. To be fair, both documents allege that Frentzel was attending semi-weekly anger management counseling sessions as required by Ferrum and Newcombe. *See* Complaint ¶¶ 12–13;

---

**8.** The plaintiff since has learned that Young, not House, was the counselor present on February 20, 2000. This fact does not impact the analysis of whether plaintiff's claim against House in the Proposed Second Amended Complaint falls within the terms of the stipulated dismissal.

May 31 Proposed Complaint ¶¶ 12–13. The claim for relief in the original complaint, though, does not appear to assert that this pre-February 20 counseling was negligent. Paragraphs 29 and 30 allege that House and the other defendants owed a duty of care to Frentzel and that they breached that duty. The allegation in Paragraph 31 alleges, "Based on Michael's past history and his conduct and statements on February 20, 2000, the defendants Ferrum College, Newcombe, House, and Holley knew or personally should have known that Michael was likely to attempt to hurt himself if not properly supervised." This statement is conjunctive—based on Frentzel's history *and* his February 20 conduct, House should have known that Michael would harm himself. In other words, the actions of the defendants on February 20 are the actions at issue.

The May 31 Proposed Complaint contains that same language in Paragraph 34. In addition, the May 31 Proposed Complaint is even more specific in its focus on the acts of the defendants on the day of Frentzel's suicide: "In assuming control of the situation on February 20, 2000, defendants Ferrum College, Newcombe, House, and Holley assumed a special relationship vis-a-vis Michael that was custodial in nature." *Id.* ¶ 31. "Despite their duty, defendants Ferrum College, Newcombe, House, and Holley increased the risk of harm to Michael by assuming control of the situation and excluding the Campus Police ...." *Id.* ¶ 39. The May 31 Proposed Complaint contains no allegation that House acted negligently toward Frentzel prior to February 20, 2000. Contrast the above paragraphs with the following from the Proposed Second Amended Complaint: "In providing anger management counseling services to Mi-

chael, defendant House assumed a special relationship vis-a-vis Michael and had a duty to use reasonable care in providing these services. Defendant House failed to follow the proper standard of care by failing to do a proper intake assessment and failing to render proper counseling services." Proposed Second Amended Complaint ¶¶ 41–42.

I am persuaded that plaintiff's proposed reinstatement of House falls outside the terms of the parties' agreement. The stipulation expressly references the "allegations of the claims" in the Complaint and the May 31 Proposed Complaint. As discussed above, those allegations concern only the conduct of the parties on February 20, 2000, not prior conduct of the parties vis-a-vis Frentzel. I conclude that the Proposed Second Amended Complaint does not assert a claim against House within the parameters of the stipulation.[9] I therefore deny plaintiff's motion with respect to House.

### 3. Punitive Damages

■ The Proposed Second Amended Complaint contains the following new allegation: "The defendants' conduct was willful, wanton and in reckless disregard of Michael's life and therefore warrants the imposition of punitive damages." *Id.* ¶ 54. Ferrum and Newcombe object to this amendment on the grounds that it would be futile, that plaintiff is guilty of undue delay, and that the amendment would prejudice the defendants. They do not dispute that this amendment arises out of the same transaction or occurrence set forth in the original complaint.

There is some confusion in this circuit as to what standard the court should apply in determining whether an amendment is fu-

---

**9.** Plaintiff has relied exclusively on the stipulation as the basis for reinstating House as a defendant. She has not argued that Rule 15 itself, independent of the stipulation, would permit this amendment.

tile. The Fourth Circuit has stated that leave to amend "should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous .on its face." *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 510 (4th Cir.1986) (citing *Davis v. Piper Aircraft Corp.,* 615 F.2d 606, 613 (4th Cir.1980)). One district court case, citing cases from other circuits, states that a futile amendment is one that cannot survive a motion for summary judgment. *Adkins v. Labor Ready, Inc.,* 205 F.R.D. 460, 462 (S.D.W.Va.2001). Other cases indicate, as counsel for Ferrum and Newcombe argued at oral argument, that Rule 12(b)(6) is the appropriate standard. *Burns v. AAF–McQuay, Inc.,* 980 F.Supp. 175, 179 (W.D.Va.1997); *Shanks v. Forsyth County Park Auth.,* 869 F.Supp. 1231, 1238 (M.D.N.C.1994); *Ry. Labor Executives Ass'n v. Wheeling & Lake Erie Ry. Co.,* 741 F.Supp. 595, 600 (E.D.Va.1990). The *Oroweat* language of "clearly insufficient or frivolous on its face" accords quite closely with the Rule 12(b) examination of insufficiency on the face of the pleadings. *See Davis,* 615 F.2d at 613 ("Unless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations, conjecture about the merits should not enter into the decision whether to allow amendment.") Therefore, I will determine whether plaintiff's proposed amendment claiming punitive damages is clearly insufficient on its face under Rule 12(b)(6).

■ In Virginia, "[b]ecause punitive damages are in the nature of a penalty, they should be awarded only in cases of the most egregious conduct." *Philip Morris Inc. v. Emerson,* 235 Va. 380, 407, 368 S.E.2d 268, 283 (1988). Tortious conduct supports punitive damages if it demonstrates malice or "negligence which is so willful or wanton as to evince a conscious disregard of the rights of others." *Booth v. Robertson,* 236 Va. 269, 273, 374 S.E.2d 1, 3 (1988). "Willfulness and wantonness convey the idea of purpose or design, actual or constructive." *Infant C. v. Boy Scouts of America,* 239 Va. 572, 582, 391 S.E.2d 322, 327–28 (1990).

Defendants cite *Philip Morris* for the proposition that, as long as a defendant takes some minimal level of care, even if that level is negligent or even grossly negligent as a matter of law, it does not rise to the level of willful and wanton conduct. In *Philip Morris,* the Supreme Court of Virginia ruled that there was insufficient evidence to support an award of punitive damages against Phillip Morris and Texaco for this reason. In an environmental tort situation, Texaco buried several cylinders containing toxic chemicals but marked them with pipes and noted their location on a map. *Id.* at 409, 368 S.E.2d at 283. Phillip Morris, the subsequent purchaser of the property, was negligent in its efforts to control the contents of the cylinders, but the fact that Phillip Morris supervised the disposal efforts evidenced some degree of care. *Id.,* 368 S.E.2d at 284. In contrast, though, the court upheld the punitive damages award against the disposal firm when an employee exposed two others to unmarked chemicals in a batch with some marked containers of toxic chemicals. The court held that this constituted reckless indifference sufficient to support the award of punitive damages. *Id.*

Although it is a close call, at this time I believe that plaintiff's proposed amendment is not futile. Paragraphs 29 through 32 of the Proposed Second Amended Complaint allege that Newcombe left Frentzel alone in his room.[10] Newcombe then went

---

10. The Proposed Second Amended Complaint also mentions Young in these paragraphs, but obviously if Young cannot be added as a defendant, then his actions do not bear on whether Newcombe and Ferrum may be liable for punitive damages.

to another floor to speak with Crystal. During the conversation, Crystal became aware of a recent email from Frentzel instructing the recipient to "tell Crystal he was sorry and that he [Michael] loved her." The contents of this message were communicated to Newcombe, and despite his knowledge of the message and Frentzel's earlier suicidal statements and actions, and despite Newcombe's assumption of control of the situation, Newcombe did not go to Frentzel's room to investigate. On a motion to dismiss under Rule 12(b)(6), the trial court must examine the allegations and determine if there is a legal theory stated on which the plaintiff can recover. Here, if the evidence can sustain reckless indifference or conscious disregard in failing to act on the information, a claim for punitive damages can be maintained. Success on the claim will be entirely contingent on the facts proven in this case. Newcombe and Ferrum may move for summary judgment if the evidence gleaned during discovery demonstrates that Newcombe's conduct did not rise to the requisite level.

■ I do not believe that this amendment prejudices the defendants in any meaningful way. The case of *Tiller v. Hobart Corp.*, 58 F.Supp.2d 688 (W.D.Va. 1999), is instructive. In that product liability case, the plaintiff's complaint contained six counts asserting various negligence and warranty claims, plus a seventh count alleging that "Hobart did all of the acts intentionally, which 'constitut[ed] a willful, wanton, and conscious disregard of the rights of the others, as well as malicious conduct.'" *Id.* at 689 (alteration in original). The defendant moved under Rule 12(b)(6) to dismiss the punitive damages count on the grounds that the complaint stated no facts proving willful, wanton, or malicious conduct. The court first looked to the plain text of Rule 9, which states that "malice, intent, knowledge, and other condition of mind of a person may be averred generally." *Id.* (quoting Fed. R.Civ.P. 9(b)). The court then rejected the defendant's claim of prejudice because procedural protections existed within the rules to protect the defendant from unsupported punitive damages claims: summary judgment, Rule 11 sanctions, and protective orders to prevent discovery of the defendant's financial information until the punitive damages claim survives a motion for summary judgment. *Id.* at 690–91.

Granted, the *Tiller* case does not address the precise situation of *amendment* to include a punitive damages claim, but it does suggest that an amendment phrased like plaintiff's proposed punitive damages claim is sufficient to state a claim. I have found only a few decisions within this circuit involving such a situation, but those decisions have permitted punitive damages amendments. *See Porter v. Groat*, 713 F.Supp. 893, 897 (M.D.N.C.1989) (permitting amendment to claim punitive damages involving same conduct alleged in original complaint); *Goodman v. Poland*, 395 F.Supp. 660, 684–85 (D.Md.1975) (permitting amendment to include fraud claim and prayer for punitive damages). A request for damages in any form is not a "claim" in the same manner as factual allegations. *Porter*, 713 F.Supp. at 897. The fact that an amendment raises the potential amount of recovery does not bar relation back. *Goodman*, 395 F.Supp. at 685. Furthermore, although Rule 8 requires the plaintiff to include a claim for the relief to which she feels entitled, Rule 54(c) provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." *See In re Landbank Equity Corp.*, 83 B.R. 362, 376 (E.D.Va.1987) (affirming award of punitive damages when, although complaint did not request punitive damages, complaint alleged facts sufficient to support award);

6A Wright, Miller & Kane, Federal Practice and Procedure § 1497, at 85 (2d ed.1990) (stating that amendment increasing amount claimed for relief is permissible albeit unnecessary in light of Rule 54). Similarly, if plaintiff's evidence supports the requisite level of culpability, Rule 15(b) would permit an amendment to conform to the evidence. Thus there is no meaningful prejudice to the defendants. Without prejudice, delay alone cannot defeat an amendment. *Frank M. McDermott, Ltd. v. Moretz,* 898 F.2d 418, 421 (4th Cir.1990).

For these reasons, I will grant plaintiff leave to amend to claim punitive damages. The defendants certainly are free to move for summary judgment if discovery does not produce evidence of malice, willfulness, or wantonness sufficient to support a jury award of punitive damages.

## CONCLUSION

For the reasons stated above, plaintiff's motion for leave to amend is **DENIED** as to House, Young, and Piedmont, and is **GRANTED** as to the claim for punitive damages against Ferrum and Newcombe. Because plaintiff's Proposed Second Amended Complaint does not reflect this ruling, plaintiff shall have ten days from the date of this opinion to submit an amended complaint in accordance with this opinion.