# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 9, 2008          Decided January 13, 2009

No. 07-7122

SALAH N. OSSEIRAN,
APPELLEE

v.

INTERNATIONAL FINANCE CORPORATION,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 06cv00336)

*Francis A. Vasquez Jr.*, argued the cause for appellant. With him on the briefs was *Frank Panopoulos*.

*Michael Joseph* argued the cause for appellee. With him on the brief was *Alex Blanton*. *Joseph O. Click* entered an appearance.

Before: RANDOLPH, ROGERS and TATEL, *Circuit Judges*.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, *Circuit Judge*: The International Finance Corporation is a global institution with 178 member states, including the United States. It invests in private enterprises in developing nations. Its charter states that it "shall seek to revolve its funds by selling its investments to private investors whenever it can appropriately do so on satisfactory terms." Articles of Agreement of the International Finance Corporation, art. 6, § 3(vi), Dec. 5, 1955, 7 U.S.T. 2197, T.I.A.S. No. 3620 ("IFC Charter"). Salah N. Osseiran, a Lebanese businessman, sought to purchase one of International Finance's investments. When the deal soured, Osseiran sued International Finance. The question on appeal is whether the International Finance Corporation is immune from the suit.

In September 2005, Osseiran approached Jan van Bilsen, International Finance's portfolio manager for the Middle East. Osseiran wanted to buy International Finance's 11 percent stake in the Middle East Capital Group, a Guernsey corporation headquartered in Beirut, Lebanon. At the time, Osseiran was a minority shareholder in the Capital Group. In an October 3, 2005, email to van Bilsen, Osseiran offered to purchase the shares and requested confidentiality for his offer. The parties then began negotiating the terms of the proposed sale, primarily through email and telephone exchanges. Two months of bargaining culminated in van Bilsen sending Osseiran a draft sales agreement on November 26. The November agreement set forth the purchase price, payment terms, and warranties. It also stated that the parties intended to be contractually bound only upon execution of the document; van Bilsen noted that International Finance reserved the right to modify the terms. On December 1, Osseiran responded that the agreement was "generally Ok" and proposed some changes. Salah N. Osseiran Decl., Feb. 26, 2006, Ex. D. At this point the parties' accounts diverge. Despite Osseiran's entreaties, International Finance declined to sign the draft agreement. On or before February 16,

2006, Osseiran learned that International Finance intended to sell its shares to a higher bidder.

Osseiran's amended complaint was in three counts. Count 1 alleged that the November agreement was a binding contract and that International Finance breached it. Count 2 alleged that International Finance knew Osseiran planned to acquire a controlling interest in the Middle East Capital Group, that he bought out other shareholders in reliance on International Finance's "promise to sell" him its shares, and that International Finance is therefore estopped from reneging and selling the shares to another party. Count 3 alleged breach of confidentiality on the basis that International Finance agreed to keep its discussions with Osseiran secret but then divulged them.

International Finance moved to dismiss on the grounds that it was immune from suit under the International Organizations Immunities Act, 22 U.S.C. §§ 288–288f, and that the complaint failed to state a cause of action. The district court held that International Finance had waived its immunity, but granted the motion to dismiss the breach of contract count pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] *Osseiran v. Int'l Fin. Corp.*, 498 F. Supp. 2d 139, 142 (D.D.C. 2007). We have appellate jurisdiction over International Finance's interlocutory appeal from the denial of its immunity claim with respect to Count 2 (promissory estoppel) and Count 3

---

[1] The statutory basis for the court's jurisdiction is the International Finance Corporation Act, 22 U.S.C. § 282f, which provides that any "action at law or in equity to which the [International Finance] Corporation shall be a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of any such action."

(confidentiality). *See, e.g., Rendall-Speranza v. Nassim*, 107 F.3d 913, 916 (D.C. Cir. 1997).

The International Organizations Immunities Act applies to those international organizations which the President designates as entitled to the benefits of the Act. Section 2(b) states that such organizations "shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments, except to the extent that such organizations may expressly waive their immunity for the purpose of any proceedings or by the terms of any contract." 22 U.S.C. § 288a(b). Among the protected institutions are the International Monetary Fund, the World Bank, and the World Trade Organization. 22 U.S.C. § 288 (historical note).

In 1956, President Eisenhower conferred the benefits of the Act on the International Finance Corporation, subject to any limitations contained in the corporation's charter. Exec. Order No. 10,680, 21 Fed. Reg. 7,647 (Oct. 2, 1956). A section of the charter entitled "Position of the Corporation with Regard to Judicial Process" states:

> Actions may be brought against the Corporation only in a court of competent jurisdiction in the territories of a member in which the Corporation has an office, has appointed an agent for the purpose of accepting service or notice of process, or has issued or guaranteed securities. No actions shall, however, be brought by members or persons acting for or deriving claims from members. The property and assets of the Corporation shall, wheresoever located and by whomsoever held, be immune from all forms of seizure, attachment or execution before the delivery of final judgment against the

Corporation.

IFC Charter art. 6, § 3(vi). The provision carries "full force and effect in the United States" by virtue of the International Finance Corporation Act, 22 U.S.C. § 282g, which executes United States membership in the corporation.

The waiver language just quoted is identical to that appearing in the charter of the International Finance Corporation's parent entity, the World Bank, and is common in the charters of other international financial institutions. *See* Restatement (Third) of Foreign Relations Law § 467 reporter's note 3 (1987). We first considered a charter with this language in *Lutcher S.A. Celulose e Papel v. Inter-Am. Dev. Bank*, 382 F.2d 454, 457 (D.C. Cir. 1967), which held that, through this language, the defendant bank waived immunity from a debtors' suit to enforce a loan agreement.

There followed *Mendaro v. World Bank*, 717 F.2d 610 (D.C. Cir. 1983), and *Atkinson v. Inter-Am. Dev. Bank*, 156 F.3d 1335 (D.C. Cir. 1998). The question in *Mendaro* was whether the World Bank had immunity from a former employee's sexual harassment and discrimination suit. Although the waiver provision contained no exceptions for different types of suit, the court read a qualifier into it. The court reasoned that an organization would not give up immunity unless it would gain a "corresponding benefit which would further the organization's goals." *Mendaro*, 717 F.2d at 617. A waiver of immunity "with respect to the World Bank's commercial transactions with the outside world" made sense, the court thought, because otherwise private parties would be hesitant to transact business with the Bank. *Id.* at 618. The court thought language in the charter indicated that the waiver of immunity, like immunity itself, was

meant to aid the Bank in accomplishing its mission.[2] *Id.* The court went on to hold that the World Bank had not waived its immunity from its employee's suit because the potential benefit of attracting qualified staff was offset by the Bank's employee grievance process and outweighed by the disruption to its labor practices. *Id.* at 619 n.56; *see also Atkinson*, 156 F.3d at 1338.

In *Atkinson*, the court considered another claim related to an international organization's internal affairs. The court held that the Inter-American Development Bank had not waived its immunity from an action to garnish one of its employee's wages in order to satisfy a divorce judgment. *Atkinson*, 156 F.3d at 1338–39. Waiver of immunity from such actions would yield the Bank no conceivable benefit. *Id.* at 1338. In so holding the court stated that if waiver of immunity from a "particular type of suit would *further* the [organization's] objectives," then the court will find a waiver. *Id.* (emphasis in original).

Both *Mendaro* and *Atkinson* upheld an international organization's claim that it had not waived immunity. Both opinions were consistent with the organization's apparent view that invoking immunity was in its best interest. But neither case considered the organization's view conclusive. The court held in both cases that it was for the federal judiciary to decide whether an international organization's invocation of immunity for certain actions would interfere with its mission. One might

---

[2] International Finance's charter, like the others considered in this line of cases, prefaces the article on "Status, Immunities and Privileges" with this statement: "To enable the Corporation to fulfill the functions with which it is entrusted, the status, immunities and privileges set forth in this Article shall be accorded to the Corporation in the territories of each member." IFC Charter art. 6, § 1.

suppose that an organization could mount a case that its judgment about the need for immunity in certain classes of cases was deserving of judicial deference. But the International Finance Corporation has not argued the case along these lines.

Instead, International Finance contends that waiver of immunity for promissory estoppel and breach of confidentiality suits would not advance its interests because Osseiran has not established the essential elements of his claims or, in the alternative, because his claims are not cognizable under governing law. In other words, Osseiran will lose on the merits. The trouble is that in this area, as in others, immunity does not turn on the validity of the underlying suit. *See Kirkham v. Société Air France*, 429 F.3d 288, 293 (D.C. Cir. 2005); *Lutcher*, 382 F.2d at 460 (finding that the defendant international organization waived immunity to the plaintiff's suit, then affirming dismissal for failure to state a claim). Both *Mendaro* and *Atkinson* ask whether a waiver of immunity to allow this *type* of suit, by this *type* of plaintiff, would benefit the organization over the long term. *Atkinson*, 156 F.3d at 1338; *Mendaro*, 717 F.2d at 618. Since the validity of Osseiran's claims is not a prerequisite to jurisdiction, we need not determine whether the law of Guernsey, the site of Middle East Capital Group's incorporation, controls, as International Finance claims.

Both *Mendaro* and *Atkinson* stated that immunity from suits based on "commercial transactions with the outside world" can hinder an organization's ability to operate in the marketplace. *Mendaro*, 717 F.2d at 618; *Atkinson*, 156 F.3d at 1338. The thought was that parties may hesitate to do business with an entity insulated from judicial process; promises founded on good faith alone are worth less than obligations enforceable in court. *See Atkinson*, 156 F.3d at 1338; *see also Lutcher*, 382 F.2d at 460. International Finance is in the business of selling

its investments to private parties. IFC Charter art. 3, § 3(vi). Sales agreements result from negotiations. Osseiran's promissory estoppel and confidentiality claims concern International Finance's alleged representations during such negotiations. To follow the *Mendaro-Atkinson* theory, waiver of immunity for an action by such a plaintiff, asserting claims arising out of that category of activity, might help attract prospective investors by reinforcing expectations of fair play. Such a "corresponding benefit" would promote International Finance's chartered objective of revolving its investments.

As against this potential benefit, International Finance identifies no unique countervailing costs like those the court identified in *Mendaro*. *See* 717 F.2d at 618 (noting waiver would "lay the Bank open to disruptive interference with its employment policies").[3] It follows that the broad language of the waiver in International Finance's charter is controlling and that the corporation does not have immunity from Osseiran's claims in counts 2 and 3 of his amended complaint.

*Affirmed.*

---

[3] The Corporation's internal policy of requiring formal execution before assuming binding obligations may go to the reasonableness of Osseiran's reliance. But it does not militate against finding waiver.