

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-13-2006

# Arthur v. Maersk Inc

Precedential or Non-Precedential: Precedential

Docket No. 04-3670

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Arthur v. Maersk Inc" (2006). *2006 Decisions.* Paper 1679.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1679

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-3670

———

EDWARD ARTHUR,

Appellant

v.

MAERSK, INC.
d/b/a MAERSK LINE LTD.;
DYN CORP. TECHNICAL SERVICES
d/b/a DYN MARINE SERVICES;
THE UNITED STATES OF AMERICA

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 02-cv-02931)
District Judge:  Honorable Harvey Bartle, III

———

Argued December 5, 2005
Before:  RENDELL, FISHER and VAN ANTWERPEN,
*Circuit Judges*.

(Filed: January 13, 2006)

Brian P. McCafferty (Argued)
Provost & Umphrey
1617 John F. Kennedy Boulevard
Suite 640
Philadelphia, PA  19103-1806
    *Attorney for Appellant*

A. Robert Degen (Argued)
Fox Rothschild
2000 Market Street, 10th Floor
Philadelphia, PA  19103
    *Attorney for Appellees Maersk, Inc.*
    *and United States of America*

Michael B. Pullano
Weber, Gallagher, Simpson,
 Stapleton, Fires & Newby
2000 Market Street, Suite 1300
Philadelphia, PA  19103

Henry A. King (Argued)
Michael L. Vincenzo
King, LeBlanc & Bland
201 St. Charles Avenue, 45th Floor
New Orleans, LA  70170
    *Attorneys for Appellee Dyn Corp.*
    *Technical Services*

OPINION OF THE COURT

FISHER, *Circuit Judge*.

From the high seas comes a question of federal civil procedure. After suffering a series of injuries while working as a merchant seaman, Edward Arthur sued his employers, Maersk, Inc., and Dyn Marine Services of Virginia, Inc.,[1] for negligence under the Jones Act, 46 U.S.C. app. § 688. Only later did he realize that, because the companies were operating as agents of the United States Navy, the only proper defendant in the case was the United States. He sought and was granted leave to file an amended complaint naming the United States as a party, and requested that this claim "relate back" to the original complaint to avoid a statute of limitations bar. The District Court acknowledged that the prerequisites for relation back under Federal Rule of Civil Procedure 15(c) had been satisfied, but nevertheless denied the request on the ground that Arthur had unduly delayed in seeking leave to amend. We conclude that this decision was in error, and will reverse.

---

[1]Dyn Marine is incorrectly identified in the complaint and caption of the case as "Dyn Corp. Technical Services."

I.

From May 1999 through December 2000, Arthur worked on four different ships and suffered four similar injuries. On May 17, 1999, while employed by Maersk on board the "U.S.N.S. *Stalwart Tagos-1*," Arthur sustained a knee injury when the ship "rolled" during a weekly lifeboat inspection. In early October 1999, while working for Maersk on the "U.S.N.S. *Capable*," Arthur hurt his knee once again when the ship "rolled." On May 2, 2000, while employed by Dyn Marine aboard the "U.S.N.S. *Littlehales*," Arthur suffered yet another knee injury when his foot became caught in a gap in the deck matting. Finally, on or about December 19, 2000, while employed by Maersk on the "U.S.N.S. *Assertive*," Arthur aggravated his condition by climbing ladders and performing other tasks. These injuries resulted in significant medical expenses and rendered Arthur unable to return to work.

The four ships on which Arthur worked were operated by Maersk and Dyn Marine but were owned by the United States Navy. Contracts between the companies and the United States provided that the Navy would maintain control of the ships while the companies would offer day-to-day personnel and operational support. Maersk operated the *Stalwart Tagos-1*, *Capable*, and *Assertive*; Dyn Marine operated the *Littlehales*. The relationship between the companies and the Navy was reflected by the designation "U.S.N.S.," the official abbreviation for "United States Naval Ships."[2]

---

[2]*See* 32 C.F.R. § 700.406(c) ("Civilian manned ships, of the Military Sealift Command or other commands, designated

On May 16, 2002 – more than two years after he had been injured on board the *Stalwart Tagos-1*, *Capable*, and *Littlehales* but less than two years after the incident on the *Assertive* – Arthur commenced a civil action against Maersk and Dyn Marine in the United States District Court for the Eastern District of Pennsylvania. He alleged that the companies, as the owners "and/or" operators of the vessels, had failed to maintain deck and other facilities and were liable for negligence under the Jones Act, 46 U.S.C. app. § 688. He also raised claims of unseaworthiness and for maintenance and cure.

The complaint was served in due course and answers were filed by September 2002. Neither the answer of Maersk nor that of Dyn Marine refers to the Navy's ownership of the vessels or the nature of the contracts under which the companies operated the ships. The only statement suggesting the government's connection to the case appears in one of Dyn Marine's affirmative defenses: "Pursuant to the Suits in Admiralty Act . . . [and] the Suits in Public Vessels Act [Arthur] does not have a right of action against [Dyn Marine]." Both of these Acts provide a remedy against the United States, to the exclusion of all others, for a seaman injured on board a ship owned by or operated on behalf of the Navy.[3]

---

'active status, in service' shall be called 'United States Naval Ship' or 'U.S.N.S.'").

[3]*See* 46 U.S.C. app. § 742 ("In cases where if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained,

5

A status conference was scheduled for October 15, 2002. Prior to the conference, counsel for Maersk submitted a status report indicating, as a "special comment," that the "[c]ase arises under Public Vessels Act." The topic was explored in greater detail during the conference itself. Counsel for Maersk and Dyn Marine "clearly made known their views that the United States, not their clients, was the proper defendant." The District Court urged the companies to file dispositive motions as soon as possible to address the issue and avoid the costs of litigation. It also established, upon agreement of the parties, a ten-day deadline for initial disclosures under Federal Rule of Civil Procedure 26(a)(1).

---

any appropriate nonjury proceeding in personam may be brought against the United States . . . ."); *id.* § 781 ("A libel in personam in admiralty may be brought against the United States . . . for damages caused by a public vessel of the United States . . . ."); *In re United States*, 367 F.2d 505, 511 (3d Cir. 1966) (holding that, if operator of ship acts as an agent of the United States, exclusive remedy of person injured on ship is against the United States), *cited with approval in Favorite v. Marine Pers. & Provisioning, Inc.*, 955 F.2d 382, 388 (5th Cir. 1992); *see also* 46 U.S.C. app. § 745 ("[W]here a remedy is provided by this chapter it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States or of any incorporated or unincorporated agency thereof whose act or omission gave rise to the claim . . . .").

Neither Maersk nor Dyn Marine complied with the deadline.[4] Dyn Marine did not produce its initial disclosures until November 4, 2002, and Maersk did not make its disclosures until December 16, 2002. There were other problems as well. Dyn Marine's disclosures did not include a copy of the operational contract between the company and the Navy. Maersk's disclosures included the contract but were initially misdirected to referring counsel, based in Mobile, Alabama. They were not delivered to Arthur's lead counsel, in Philadelphia, Pennsylvania, until late December 2002, after the statute of limitations for claims against the United States had expired.

Within a month, Maersk and Dyn Marine filed separate motions for summary judgment. Both were predicated on the same argument: that, because the ships were owned by and operated on behalf of the United States, Arthur's exclusive remedy for his injuries was an action against the United States. Copies of the operational contracts between the companies and the United States – including the one with Dyn Marine that had not been previously disclosed – were attached in support of the motions.

Soon thereafter, on February 19, 2003, Arthur filed a motion to stay proceedings on summary judgment pending further discovery pursuant to Federal Rule of Civil Procedure

---

[4]Arthur's initial disclosures were provided to opposing counsel on October 22, 2002, within ten days of the status conference.

56(f).[5] His counsel asserted in an attached declaration that the operational contracts had not been timely disclosed and that additional discovery was required to determine whether the contracts supported the claimed defense. The District Court granted the request.

Depositions of company officials confirmed that the ships were owned by the United States and operated by Maersk and Dyn Marine under the operational contracts. The depositions also revealed that the United States had received notice of the action against Maersk and Dyn Marine in July 2002, soon after the original complaint had been served.

On April 14, 2003, Arthur filed a motion for leave to amend the complaint to add the United States as a party. The motion was granted by the District Court on May 6, 2003, and an amended complaint was filed on May 13, 2003. The amended complaint substantially repeats the allegations of the original complaint, but asserts that the United States is liable under the Suits in Admiralty Act, 46 U.S.C. app. § 742, and the Public Vessels Act, 46 U.S.C. app. § 781, for the negligence of its "agents," Maersk and Dyn Marine. Three days later, the District Court granted the companies' motions for summary

_____

[5]*See* Fed. R. Civ. P. 56(f) ("Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.").

judgment on the ground that Arthur's exclusive remedy was against the United States.[6]

The United States, now the sole defendant, filed a motion to dismiss the complaint as barred by the two-year statute of limitations of the Suits in Admiralty Act, 46 U.S.C. app. § 745. Following briefing, the District Court granted the motion. It recognized that the new claim would be timely if the amendment was deemed to relate back to the original complaint, filed in August 2002, pursuant to Federal Rule of Civil Procedure 15(c). It also recognized that all of the enumerated prerequisites for

---

[6]Arthur had requested that the District Court exclude the operational contracts from the record on summary judgment as a sanction against Maersk and Dyn Marine for the late disclosures. *See* Fed. R. Civ. P. 37(c)(1) ("A party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed."). Without these contracts, it is arguable that the companies would not have been able to establish an agency relationship with the United States and, thus, would not have been entitled to summary judgment. *See, e.g.*, *In re United States*, 367 F.2d at 511. The District Court declined to exclude the contracts without explanation, and Arthur challenges this decision on appeal. Based on our conclusion that remand is warranted on other grounds, we need not reach the issue.

9

relation back had been satisfied.[7]  Nevertheless, it held that relation back should be denied because Arthur was "unduly dilatory" in bringing his claim against the United States.

The District Court found that, as an "experienced merchant seaman," Arthur "knew or should have known" by the "U.S.N.S." designation that the ships were owned by and operated on behalf of the United States Navy and, thus, should have brought his claim against the United States originally.  It also noted that Maersk and Dyn Marine had raised the agency issue during the status conference in October 2002 and in their motions for summary judgment in January 2003 but that Arthur had not filed a motion for leave to amend until April 2003.  It acknowledged that the companies may have been tardy in producing their contracts with the Navy, but admonished that Arthur should not have "wait[ed] until he ha[d] absolute certainty before moving to amend."

---

[7]The District Court determined that the claim in the amended complaint arose from the same transactions as those in the original complaint, *see* Fed. R. Civ. P. 15(c)(2), found that the United States had received notice of the action within the period authorized for service and would not "be prejudiced in maintaining a defense on the merits" if the case proceeded to trial, *see id.* 15(c)(3)(A), and assumed that the United States should have known that Arthur would have named it in the original complaint but for his "mistake" concerning the agency relationship between the private companies and the Navy, *see id.* 15(c)(3)(B).

10

The District Court concluded that "[a]ny mistake about the United States was clearly no longer a mistake as of the . . . status conference," and that any delay thereafter could not be justified. It stated: "[B]ecause Arthur's motion to amend came too late, we will grant the motion of the United States to dismiss his . . . claim[] as barred by the two-year statute of limitations of the Suits in Admiralty Act, 46 U.S.C. [a]pp. § 745."[8]

This timely appeal followed. We have jurisdiction under 28 U.S.C. § 1291.

## II.

Federal Rule of Civil Procedure 15 embodies a liberal approach to pleading. *See, e.g.*, *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004), *cert. denied*, 125 S. Ct. 1976 (2005). Subsection (a) allows a party to amend a complaint upon leave of court and states that leave "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Subsection (c)

---

[8]The District Court had originally granted the motion on grounds that the statute of limitations was "jurisdictional" and that, because the United States had not been named as a party until May 2003 – more than two years after Arthur's final injury in December 2000 – the lawsuit was barred notwithstanding application of Rule 15(c). It subsequently reconsidered this conclusion on motion by Arthur and held that, under *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990), the limitations period was not jurisdictional and did not necessarily bar relation back of the amendment. Nevertheless, the District Court affirmed its prior ruling based on undue delay.

11

provides that an amendment arising out of the same conduct as that alleged in the original complaint will normally "relate back" to the complaint for statute of limitations purposes. *Id.* 15(c). Combined, these provisions ensure that an inadvertent error in pleading will not preclude a party from securing relief on the merits of a claim. *See, e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Leave to amend under subsection (a) and relation back under subsection (c), while obviously related, are conceptually distinct. Leave to amend should be granted whenever "justice so requires." Fed. R. Civ. P. 15(a). This standard encompasses a broad range of equitable factors, including a party's delay in seeking leave to amend and any prejudice to the opposing party. *See Foman*, 371 U.S. at 182. Only when these factors suggest that amendment would be "unjust" should the court deny leave. *Id.*

The relation back inquiry is more circumscribed. Rule 15(c) enumerates three distinct prerequisites for an amendment to relate back to the original complaint: (1) the claims in the amended complaint must arise out of the same occurrences set forth in the original complaint, (2) the party to be brought in by amendment must have received notice of the action within 120 days of its institution, and (3) the party to be brought in by amendment must have known, or should have known, that the action would have been brought against the party but for a mistake concerning its identity. Fed. R. Civ. P. 15(c). Once these requirements are satisfied, Rule 15(c) instructs that the "amendment . . . relates back to the date of the original pleading." *Id.*; *see also Varlack v. SWC Caribbean, Inc.*, 550

12

F.2d 171, 174-75 (3d Cir. 1977); 6A Charles Alan Wright et al., *Federal Practice and Procedure* § 1498 (2d ed. 1990).

There is no allowance in Rule 15(c) for inquiry into a party's delay in moving for leave to amend. Such equitable considerations are relevant to whether leave to amend should be granted under Rule 15(a), *see Foman*, 371 U.S. at 182, but do not relate to any of the enumerated conditions of Rule 15(c), *see Lundy v. Adamar of N.J., Inc.*, 34 F.3d 1173, 1196-97 (3d Cir. 1994) (Becker, C.J., concurring in part in the judgment and dissenting in part); *Anderson v. Deere & Co.*, 852 F.2d 1244, 1248 (10th Cir. 1988); 6A Wright et al., *supra*, § 1498. "Undue delay" is a reason to deny leave to amend but not to deny relation back. *See Anderson*, 852 F.2d at 1248; 6A Wright et al., *supra*, § 1498; *see also Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003); *Varlack*, 550 F.2d at 174-75.

The District Court did not recognize this distinction. It assumed that all of the prerequisites under Federal Rule of Civil Procedure 15(c) had been satisfied; yet, it denied relation back based on "undue delay." This was in error.[9] The proper course

---

[9]The District Court may have been led astray by dicta in *Nelson v. County of Allegheny*, 60 F.3d 1010 (3d Cir. 1995), in which we stated that relation back was properly denied when the plaintiffs, who had delayed for three years in moving to amend the complaint, could not establish that their failure to bring an earlier amendment was due to "mistake." *Id.* at 1014-15. Although this conclusion, like that of the District Court in this case, seems to import the "undue delay" factor of Rule 15(a) into the elements of Rule 15(c), the holding in *Nelson* was

13

for the District Court, upon finding that Arthur had unduly delayed in requesting leave to amend, would have been to vacate its prior order granting leave to amend and then to strike the amended complaint. *Cf. Nieves-Luciano v. Hernandez-Torres*, 397 F.3d 1, 4 (1st Cir. 2005) (noting that pre-trial orders from which no interlocutory appeal may be taken "remain open to trial court reconsideration" until the entry of judgment) (quoting *Geffon v. Micrion Corp.*, 249 F.3d 29, 38 (1st Cir. 2001)).

But it does not follow that the decision of the District Court must be reversed. We could still affirm if we conclude that the District Court's findings would support denial of leave to amend under Rule 15(a). Likewise, we may affirm if we determine as a matter of law that the prerequisites for relation back under Rule 15(c) have not been satisfied. *See Cent. Pa. Teamsters Pension Fund v. McCormick Dray Line, Inc.*, 85 F.3d 1098, 1107 (3d Cir. 1996) ("[W]e may affirm a correct decision of the district court on grounds other than those relied upon by the district court . . . .").

otherwise justified because the plaintiffs had been aware of their claims against the defendants at the time the case was commenced, but had decided not to sue them in the original complaint, *id.* at 1011. *See Garvin*, 354 F.3d at 221-22 ("[A]n amended complaint will not relate back if the plaintiff had been aware of the identity of the newly named parties when she filed her original complaint and simply chose not to sue them at that time."); 3 James Wm. Moore et al., *Moore's Federal Practice – Civil* § 15.19[3][d] (3d ed. 1997) ("[A] conscious choice to sue one party and not another does not constitute a mistake and is not a basis for relation back.").

14

A.

Leave to amend must generally be granted unless equitable considerations render it otherwise unjust. *Foman*, 371 U.S. at 182; *see also Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993). Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility. *Lorenz*, 1 F.3d at 1414 (quoting *Foman*, 371 U.S. at 182). We have consistently recognized, however, that "prejudice to the non-moving party is the touchstone for the denial of an amendment." *Id.* (quoting *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)); *see also* 3 James Wm. Moore et al., *Moore's Federal Practice – Civil* § 15.15[2] (3d ed. 1997); 6 Wright et al., *supra*, § 1488.

The District Court determined that the amended complaint presented a valid claim and that the United States would not suffer any prejudice if amendment was permitted. The District Court did not state, and the record does not suggest, that Arthur acted in bad faith or with improper motive. The only potential ground to deny leave to amend is undue delay.

Delay alone is not sufficient to justify denial of leave to amend. *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). "[H]owever, at some point, . . . delay will become 'undue,' placing an unwarranted burden on the court . . . [and] an unfair burden on the opposing party." *Id.*, *quoted in Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied. *Id.*; *see also Cureton*, 252 F.3d at 273 ("[T]he

15

question of undue delay requires that we focus on the movant's reasons for not amending sooner.").

Arthur's delay was neither so egregious nor unexplained as to warrant refusal of leave to amend. The original complaint was filed in May 2002 and the proposed amendment was filed in April 2003, less than a year later.[10] Without discounting the expense involved in litigating a case for eleven months, only one appellate court uncovered in our research has approved of denial of leave to amend based on a delay of less than one year. *See Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 141-42 (5th Cir. 1993) (nine months); *cf. Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 994-95 (5th Cir. 2005) (affirming denial of leave based on delay of one year); *Lewis v. Fresne*, 252 F.3d 352, 360 (5th Cir. 2001) (same). There is, of course, no presumptive period in which a motion for leave to amend is deemed "timely" or in which delay becomes "undue." However, a period of eleven months from commencement of an action to the filing of a motion for leave to amend is not, on its face, so excessive as to be presumptively unreasonable. *See Roberson v. Hayti Police Dep't*, 241 F.3d 992, 996 (8th Cir. 2001) (stating that delay of eleven months did not justify denial of leave to amend); *see also, e.g.*, *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004) (delay of eight months); *Tefft v. Seward*, 689

_____

[10]It is immaterial that Arthur waited for almost two years after the injuries at issue to file his complaint. *See Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 939 (3d Cir. 1984) ("[T]he delay exception in amending the complaint refers to delay in the actual proceeding in which the complaint occurs, not delay in bringing suit.").

16

F.2d 637, 639-40 (6th Cir. 1982) (delay of four years); *Buder v. Merrill Lynch, Pierce, Fenner & Smithi Inc.*, 644 F.2d 690, 694 (8th Cir. 1981) (delay of two and a half years).

More importantly, Arthur has offered a justification for the delay: he did not know that the ships on which he had been injured were owned by and operated on behalf of the United States Navy.[11] This is borne out by the procedural history of this case. The original complaint names only Maersk and Dyn Marine as defendants, without suggesting the involvement of the United States. The answers to the complaint do not mention the agency relationship between the companies and the United States; indeed, the issue was not raised until the October status conference, when counsel for the companies suggested (without proof) that the United States was the proper defendant. The operational contracts confirming this allegation were not disclosed to Arthur until December 2002, after the statute of limitations had expired. Once Arthur's counsel verified these contracts and ensured that the United States had adequate notice of the cause of action, he filed the motion for leave to amend.

That the vessels were designated "U.S.N.S." does not, contrary to the government's position, necessarily mean that

---

[11]*See Adams*, 739 F.2d at 867-68 (stressing importance of a "colorable excuse" for not amending earlier); *see also USX Corp. v. Barnhart*, 395 F.3d 161, 167-68 (3d Cir. 2004) (same), *cert. denied*, 126 S. Ct. 420 (2005); 3 Moore et al., *supra*, § 15.15[2] (suggesting that amendment should be allowed if party offers reason for delay); 6 Wright et al., *supra*, § 1488 (same).

Arthur should have been aware of the agency relationship at the time the complaint was filed. Obviously, this designation suggests that the vessel is being operated on behalf of the United States, and would likely support a party's decision to file suit against the United States for injuries sustained thereon. However, it does not conclusively establish agency. *Cf. Favorite v. Marine Pers. & Provisioning, Inc.*, 955 F.2d 382, 388 (5th Cir. 1992) (stating that designation of ship as "public vessel" is not determinative of control by United States). The only means by which a party can establish agency is through evidence demonstrating that the United States exercised a significant degree of control over the vessel's operations. *See id.*; *see also Alexander v. United States*, 63 F.3d 820, 823 (9th Cir. 1995); *Servis v. Hiller Sys. Inc.*, 54 F.3d 203, 207-09 (4th Cir. 1995); *Wilson v. United States*, 23 F.3d 559, 561-62 (1st Cir. 1994); *In re United States*, 367 F.2d 505, 511 (3d Cir. 1966). Such evidence most often takes the form of operational contracts between the private company and the government. *See*, *e.g.*, *Favorite*, 955 F.2d at 388.

The contracts between the companies in this case and the United States were not made available to Arthur until December 2002. Only through these contracts could Arthur finally credit the allegations of opposing counsel and conclude that the United States was indeed the proper party. Had the contracts been produced in October 2002 – as they should have been – Arthur would have had sufficient time to file his claim against the United States before the expiration of the statute of limitations. The late disclosure denied Arthur this opportunity and required him to conduct additional discovery – and incur additional delay – to support his request for relation back.

18

Nothing in the record bespeaks the dilatory motive or repeated and unjustified failures to amend that we have previously characterized as warranting denial of leave. *See Adams*, 739 F.2d at 868. To the contrary, Arthur prosecuted his case in a fairly diligent manner. He served the complaint in a timely fashion, provided and requested discovery in accordance with the Federal Rules of Civil Procedure, and, after the operational contracts were disclosed, sought to confirm or deny the relationship between the companies and the United States. He filed the motion for leave to amend soon after he had secured evidence supporting his request for relation back of the claim against the United States. *Compare Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000) (noting that failure to prosecute case supported denial of leave to amend), *with Adams*, 739 F.2d at 867-68 (noting that plaintiff's diligent efforts to prosecute case supported grant of leave to amend). Even if Arthur, with the benefit of hindsight, could have named the United States prior to this time, his failure to do so cannot be viewed as so egregious as to render amendment inequitable. *Cf. Dubicz*, 377 F.3d at 793 (finding that delay of eight months did not support denial of leave to amend, even when attorney was negligent); *Tefft*, 689 F.2d at 639-40 (same, but delay of four years); *Buder*, 644 F.2d at 694 (same, but delay of two and a half years).

The liberality of Rule 15(a) counsels in favor of amendment even when a party has been less than perfect in the preparation and presentation of a case. *See Foman*, 371 U.S. at 182; *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938-39 (3d Cir. 1984). It allows for misunderstandings and good-faith lapses in judgment, so long as the party thereafter acts reasonably and diligently. *Adams*, 739 F.2d at 868-69; *see also*

19

6 Wright et al., *supra*, § 1488 (stating that leave should be granted if delay was due to "oversight or excusable neglect"). Whether or not Arthur hypothetically could have deduced that the United States was the proper party at the outset of the case, the record demonstrates that he took affirmative steps soon thereafter to determine the identity of the proper party and to amend the complaint accordingly. His delay cannot be considered "undue."

We agree with the District Court that the United States was not prejudiced by Arthur's delay in seeking to amend the complaint. The government has not argued that the delay impaired its ability to defend against the suit or that it "was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendment[] been timely." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (quoting *Heyl & Patterson Int'l, Inc. v. F.D. Rich Hous.*, 663 F.2d 419, 426 (3d Cir.1981)). It received prompt notice of the commencement of this case and could have begun investigating Arthur's claim soon after it was filed. A "careless or myopic" decision on the part of the United States to initiate only "superficial investigatory practices," despite the likelihood that Arthur would later name it as a defendant, does not constitute prejudice for purposes of Rule 15(a). *See* 6 Wright et al., *supra*, § 1498; *see also Lundy*, 34 F.3d at 1189 n.8 (Becker, C.J., concurring in part in the judgment and dissenting in part). In the absence of cognizable prejudice to the United States, the District Court was obliged to grant Arthur leave to file the amended complaint. *See Adams*, 739 F.2d at 867-69; *Boileau*, 730 F.2d at 938-39; *see also Cureton*, 252 F.3d at 275.

20

B.

That the District Court was required to grant leave to amend does not necessarily mean that dismissal of the claim against the United States was improper. The original complaint in this case, naming Maersk and Dyn Marine as defendants, was filed in May 2002, and the amended complaint, naming the United States as a party, was filed in May 2003. The statute of limitations for the claim against the United States expired in December 2002.[12] *See* 46 U.S.C. app. § 745. As such, this claim may proceed only if the amended complaint is deemed to relate back to the original complaint.

Federal Rule of Civil Procedure 15(c) provides that an amendment naming a new party will relate back to the original complaint for statute of limitations purposes only if several prerequisites are satisfied: (1) the claim in the amended pleading must arise out of the "conduct, transaction, or occurrence" set forth in the original pleading; (2) within 120 days of institution of the action, the party to be brought in by amendment must have received "such notice of the . . . action that the party will not be prejudiced in maintaining a defense on the merits"; and, (3) within 120 days of institution of the action, the party to be brought in by amendment must have known or should have known that, "but for a mistake concerning the

---

[12]This claim is the one related to Arthur's injuries on board the *Assertive*, in December 2000. The other injuries occurred more than two years prior to the filing of the complaint in this case and claims based thereon would not be timely even if relation back is recognized. *See* 46 U.S.C. app. § 745.

21

identity of the proper party," the action would have been brought against that party. Fed. R. Civ. P. 15(c); *see also Garvin*, 354 F.3d at 220-21; *Varlack*, 550 F.2d at 174; 3 Moore et al., *supra*, § 15.19[3]; 6A Wright et al., *supra*, § 1498.

The District Court found, and the parties concede, that the claim against the United States arises out of the same transactions as the claims in the original complaint. It is also undisputed that the United States received adequate notice of the action within 120 days of commencement of the case and would not be prejudiced if required to defend against the claim.

The sole question is whether the United States knew or should have known that, but for a "mistake" concerning the identity of the proper party, it would have been named in the original complaint.[13] *See* Fed. R. Civ. P. 15(c)(3)(B). The District Court assumed that Arthur's failure to name the United States qualified as a mistake. On appeal, the United States argues that, because Arthur was an experienced seaman who should have recognized by the designation "U.S.N.S." that the ships were public vessels, there is no basis on which to find that a "mistake" occurred.

---

[13]The language of Rule 15(c) plainly implies that the "mistake" must have occurred at the time the complaint was filed. *See* Fed. R. Civ. P. 15(c)(3)(B) (defining the "mistake" as one that affected the parties against whom the action would have been "brought"); *see also, e.g.*, *Garvin*, 354 F.3d at 220-21; 6A Wright et al., *supra*, § 1498; *cf. supra* note 9 (discussing *Nelson v. County of Allegheny*, 60 F.3d 1010 (3d Cir. 1995)).

22

This argument fails for the reasons previously discussed. The designation "U.S.N.S." is not dispositive as to the existence of an agency relationship between the ship operators and the United States. *Cf. Favorite*, 955 F.2d at 388 (stating that designation of ship as "public vessel" is not determinative of control by United States). At best, it simply suggests that further investigation may be warranted. That the ships bore this designation does not preclude a finding that Arthur was reasonably mistaken regarding the identity of the potentially liable party in this case.

Indeed, the procedural history of this case supports a finding of mistake. The original complaint did not name the United States as a party, even though it would have been in Arthur's interest to do so. The answers to the complaint did not indicate that the United States owned the ships, and the companies did not allege that the United States was the proper defendant until October 2002. Documentary support for this assertion was not forthcoming for another two months, at which time Arthur sought additional discovery to support his claim against the United States. The only reasonable conclusion that can be gleaned from the record is that Arthur made a mistake as to the proper party when he filed the original complaint and that this mistake was not finally corrected until December 2002, after expiration of the statute of limitations. *Cf.* 6A Wright et al., *supra*, § 1498 (stating that a "plaintiff's own inexcusable neglect" in failing "to name the correct party," although "germane to the question of permitting an amendment," is not relevant to the satisfaction of the notice requirements of Rule 15(c)").

It is of no consequence that Arthur's mistake resulted from lack of knowledge, rather than mere misnomer. Although a majority of courts have held that only a "misnomer or misidentification" of an existing party can constitute a "mistake concerning the identity of the proper party" under Rule 15(c), *see, e.g.*, *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 469 (2d Cir. 1995), *amended by* 74 F.3d 1366 (2d Cir. 1996),[14] there is no linguistic basis for this distinction. *See Pavelic & LeFlore v. Marvel Entm't Group*, 493 U.S. 120, 123 (1989) ("We give the Federal Rules of Civil Procedure their plain meaning."). A "mistake" is no less a "mistake" when it flows from lack of knowledge as opposed to inaccurate description. *See Webster's Third New International Dictionary* 1446 (1981) (defining "mistake" as "a wrong . . . statement proceeding from faulty judgment, inadequate knowledge, or inattention"). Both errors render the plaintiff unable to identify the potentially liable party and unable to name that party in the original complaint. *See* 3 Moore et al., *supra*, § 15.19[3][d]. Thus, both errors constitute a "mistake concerning the identity of the proper party" for purposes of Rule 15(c). *See Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 200-01 & n.5 (3d Cir. 2001); *Varlack*, 550 F.2d

---

[14]*See also Powers v. Graff*, 148 F.3d 1223, 1226-27 (11th Cir. 1998); *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998); *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Wilson v. United States*, 23 F.3d 559, 563 (1st Cir. 1994) (citing *Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir. 1993)); *W. Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1201 (4th Cir. 1989); *Wood v. Woracheck*, 618 F.2d 1225, 1229-30 (7th Cir. 1980).

at 174-75; 3 Moore et al., *supra*, § 15.19[3][d]; 6A Wright et al., *supra*, § 1498.[15]

This interpretation accords with other provisions of Rule 15(c)(3), which authorize relation back of amendments that either (1) "change[] . . . the naming of a party against whom a claim is asserted" or (2) "change[] the party . . . against whom a claim is asserted." Fed. R. Civ. P. 15(c)(3). The first of these clauses permits relation back when an amendment corrects a misidentification of an existing party; the second applies when an amendment substitutes or adds a new party. *Lundy*, 34 F.3d at 1192-93 & n.13 (Becker, C.J., concurring in part in the judgment and dissenting in part); 3 Moore et al., *supra*, § 15.19[3][d]. To limit relation back to cases involving misnomer, excluding cases in which the amendment adds a new party, would render the second clause of Rule 15(c)(3) superfluous. A broader interpretation of "mistake" is necessary

---

[15]*See also* Fed. R. Civ. P. 15 advisory committee's note–1966 (indicating that relation back is not limited to situations in which amendment simply "correct[s] a misnomer or misdescription of a defendant"); *cf. Leonard v. Parry*, 219 F.3d 25, 27-29 (1st Cir. 2000) (upholding relation back of amendment naming the actual driver of the car as a defendant when plaintiff had mistakenly believed that the owner of the car was operating vehicle at time of accident); *G.F. Co. v. Pan Ocean Shipping Co.*, 23 F.3d 1498, 1504 (9th Cir. 1994) (upholding relation back of amendment naming shipping company as defendant when plaintiff had mistakenly believed that a claims agent, rather than the shipping company, "owned, operated, and controlled" the boat).

25

to give full effect to both of these provisions. *See* 3 Moore et al., *supra*, § 15.19[3][d].

An amendment naming a new party will relate back to the original complaint if the party had adequate notice of the action and should have known that it would have been named in the complaint but for a mistake – whether the mistake is based on lack of knowledge or mere misnomer. *Id.*; *see Varlack*, 550 F.2d at 174-75.

These prerequisites are satisfied here. The United States received notice within 120 days of commencement of the case that Arthur had brought claims against private companies for injuries sustained on public vessels. The reason that these claims were not brought against the United States, the only potentially liable party, was that Arthur did not recognize the agency relationship between the companies and the Navy.

The United States should have known that it would have been named in the complaint but for this mistake. There is no basis to characterize Arthur's decision to sue his statutorily immune employers as litigation strategy, and nothing in the record suggests that the government viewed it in this manner. *See* 3 Moore et al., *supra*, § 15.19[3][d] ("[A] court . . . should consider whether the new party knew that the failure to include it in the original complaint was an error rather than a deliberate strategy."). The United States undoubtedly knew that the claims in the complaint should have been brought against it; indeed, the operational contracts (drafted by the United States) recognize that Maersk and Dyn Marine "may become involved in . . . litigation maintainable against the United States under the

26

Public Vessels Act . . . [and] the Suits in Admiralty Act" and require that the companies provide immediate notice of such an action and "cooperate with [g]overnment counsel [in] maintaining the defense." An employee of Dyn Marine confirmed that, in these types of cases, it is common for a private company to be named in the original complaint but later replaced with the United States, as the proper defendant.

The only reasonable conclusion permitted by the record is that the United States knew or should have known that, but for a "mistake concerning the identity of the proper party," it would have been named in the original complaint. *See Varlack*, 550 F.2d at 174-75 (stating that whether satisfaction of conditions of Rule 15(c) is a question of fact).

III.

Leave to amend the complaint to add the United States as a party was warranted under Federal Rule of Civil Procedure 15(a), and, because the prerequisites under Federal Rule of Civil Procedure 15(c) were satisfied, the amendment should have been deemed to relate back to the original complaint for statute of limitations purposes. The contrary decision of the District Court was in error.

Accordingly, the order of the District Court will be reversed and this case will be remanded for further proceedings consistent with this opinion.

27

VAN ANTWERPEN, <u>Circuit Judge</u>, dissenting.

Because this case compels me to conclude that Arthur is not entitled to relation back of his claim against the Government, I cannot join in the Judgment of my colleagues. Arthur received abundant notice that the United States would be exclusively liable prior to the expiration of the statute of limitations; it cannot reasonably be posited that the United States knew or should have known that he was mistaken under Federal Rule of Civil Procedure 15(c)(3)(B), nor should he have had the opportunity to amend under Rule 15(a).

I.

Regarding Arthur's motion to amend, filed April 14, 2003, the District Court noted that "[w]hen we were considering whether to allow the amendment, the United States was not then a party and thus not in a position to make its objections known." App. 28. In contrast to the majority, I read the District Court's opinion as reconsidering its grant to Arthur of leave to amend. We review decisions on motions under Fed. R. Civ. P. 15 to amend a complaint for abuse of discretion. *Dandrea v. Malsbary Mfg. Co.*, 839 F.2d 163, 166 (3d Cir. 1988). As the majority notes, delay may become undue, and hence grounds for denial of leave to amend, where it "plac[es] an unwarranted burden on the court." *Cureton v. National Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). I cannot conclude as easily as they do that this case stripped the District Court of discretion to deny leave to amend. Given that Arthur knew or should have known that he had to sue the United States before the statute of limitations expired, the District Court was under

28

no obligation to countenance his lack of diligence, and was within its discretion to deny his motion to amend.

## II.

Turning to the analysis under Rule 15(c), I am forced to conclude that Arthur has no claim to mistake. Beginning with the very name of the ship he worked aboard, the United States Naval Ship *Assertive*, Arthur and his attorney were on notice of its status as a Public Vessel within the Public Vessels Act ("PVA"), 46 U.S.C. app. § 781, and the Suits in Admiralty Act ("SAA"), 46 U.S.C. app. § 745. The Code of Federal Regulations directs that "[c]ivilian manned ships, of the Military Sealift Command or other commands, designated 'active status, in service' shall be called 'United States Naval Ship' or 'U.S.N.S.'" 32 C.F.R. § 700.406(c). Ships of "the Military Sealift Command or other commands" could not *but* be "public vessels" under any logical meaning of that term.[16] *See* 46 U.S.C. app. § 781. In turn, it is settled that the exclusive remedy for those injured aboard public vessels is against the United

---

[16] The majority's reliance on *Favorite v. Marine Personnel and Provisioning, Inc.*, 955 F.2d 382 (5th Cir. 1992), for the proposition that the "U.S.N.S." designation is not dispositive of public vessel status is well-taken as a legal point. As a practical matter, however, it is difficult at best to conceive of a situation in which a ship with such a designation would not fall within the PVA. Research revealed no such scenario. I can only conclude that the designation all but guarantees public vessel status.

States. *E.g.*, *In re United States*, 367 F.2d 505, 511 (3d Cir. 1966). Nevertheless, Arthur filed a Complaint on May 16, 2002, naming Maersk and Dyn, but not the United States, as defendants.

Arthur's refusal to timely sue the United States endured past any point where he could have been mistaken. At an October 15, 2002 status conference, occurring at least a month and a half before the statute of limitations ran in December 2002, Maersk and Dyn plainly asserted that they were the wrong parties. Arthur's attorney admits as much in his affidavit. App. 118, ¶ 7. Even earlier, Maersk's Answer raised as an affirmative defense that "Plaintiff's Complaint is barred by failure to join an indispensable party." App. 87, ¶ 45. Likewise, Dyn's Answer raised the defense more specifically, citing both the SAA and PVA as bars to its own liability. App. 96. Arthur knew enough to conclude that he should sue the United States before the expiration of the statute of limitations.

Rather than act to save his claims, however, Arthur sat by while the statute of limitations ran out. To be sure, he was not idle. He undertook an inexplicable course of discovery to unearth the obvious: that the United States had an agency relationship with Maersk and Dyn. He also notes that Maersk and Dyn were untimely in providing their contracts, which, he unconvincingly claims, were the sole means at that point of ascertaining the relationship with any certainty.[17] Even

---

[17] After he obtained the contracts in January 2003, Arthur inexplicably waited until April to file his motion to amend and relate back. This is indeed a generous liberty to take with an

30

assuming that the Government's exclusive liability was not known by Arthur until he received the contracts and conducted further discovery, he could have amended within the statute of limitations.

At oral argument, Arthur's counsel claimed that he would not add the United States without certainty of its liability for fear of Rule 11 sanctions. This rings hollow. His amendment would not have run afoul of Rule 11 because it would have been entirely proper based on what he knew prior to the expiration of the limitations period. And even if it *were* improper, the rule would have given him ample opportunity to correct any misstep before sanctions would be imposed. *See* Fed. R. Civ. P. 11(c)(1)(A) (Rule 11 motion shall not be filed with court until 21 days have elapsed from service and the "challenged . . . claim . . . is not withdrawn or appropriately corrected."). I cannot see what Arthur's counsel had to fear from preserving his client's claim by timely adding the United States, even if he did lack perfect certainty.

Further, assuming Arthur was actually unsure of the Government's liability, a ready means of preserving his claim was available. Rather than naming the United States, he could have amended the Complaint to include a "John Doe" or other unnamed defendant. This Circuit has interpreted Rule 15(c)(3)(B) to permit claims against "John Doe" defendants to relate back once a named party has been identified and added, where the other requirements of Rule 15(c) have been met, and the proper defendants are hard to ascertain. *Singletary v.*

already-expired statute of limitations.

31

*Pennsylvania Dept. of Corr.*, 266 F.3d 186, 200-01 (3d Cir. 2001) (citing *Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 175 (3d Cir. 1977)). *Contra, e.g.*, *Barrow v. Wethersfield Police Dept.*, 66 F.3d 466, 469 (2d Cir. 1995), *amended by* 74 F.3d 1366 (2d Cir. 1996). Thus, our interpretation of Rule 15(c) would have allowed Arthur to insert a "placeholder" party in his Complaint while he went about the task of assuaging whatever doubt he harbored as to the United States' amenability to suit. He did not avail himself of that procedure, and I do not think we can properly rescue him from his failure. Additionally, the majority's holding today undermines the holdings of this Court in *Singletary* and *Varlack*: litigants who find it difficult to ascertain the correct party to sue now need not even contemplate the existence of such putative parties by adding a "John Doe."

Unquestionably, we must construe the Federal Rules of Civil Procedure liberally to allow parties their day in court. *Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d 1173, 1186 n.5 (3d Cir. 1994). But as the Supreme Court has observed, "they should not be expanded by disregarding plainly expressed limitations." *Schlagenhauf v. Holder*, 379 U.S. 104, 121 (1964). Here, to hold that Arthur was actually mistaken as to the proper party to sue, and entitled to relation back of his expired claim under Rule 15(c), strains that provision beyond its proper bounds. As the District of Columbia Circuit has written, "[i]n the adversarial system of litigation the plaintiff is responsible for determining who is liable for her injury and for doing so before the statute of limitations runs out; if she later discovers another possible defendant, she may not, merely by invoking Rule 15(c), avoid the consequences of her earlier oversight." *Rendall-Speranza v. Nassim*, 107 F.3d 913, 919 (D.C. Cir.

1997).  And as the majority rightly observes, its decision is at odds with the other Courts of Appeals to have considered this issue.  *See Ish Yerushalayim v. United States Dept. of Corr.*, 374 F.3d 89, 92 (2d Cir. 2004); *Powers v. Graff*, 148 F.3d 1223, 1227 (11th Cir. 1998); *Rendall-Speranza*, 107 F.3d at 919; *Wilson v. United States*, 23 F.3d 559, 563 (1st Cir. 1994); *Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir. 1993); *In re Kent Holland Die Casting & Plating, Inc.*, 928 F.2d 1448, 1449-50 (6th Cir. 1991).

Furthermore, the prevailing – and contrary – interpretation of Rule 15(c) held by our sister circuits does not render inoperative a portion of Rule 15(c)(3), as my colleagues claim.  They note that their "interpretation accords with other provisions of Rule 15(c)(3), which authorize the relation back of amendments that either (1) 'change[] . . . the naming of a party against whom a claim is asserted' or (2) 'change[] the party . . . against whom a claim is asserted.'"  As noted above, Arthur could easily have changed a "party against whom a claim is asserted" by substituting the United States for an unnamed defendant.   My reading of Rule 15(c)(3)(B)'s mistake requirement would permit changes to parties against whom claims are asserted where the litigant seeking amendment was actually mistaken.

For the foregoing reasons, I think the District Court's Order should be affirmed.  I therefore respectfully dissent.