Donald STEWART, Plaintiff,

v.

PHILADELPHIA HOUSING AUTHORITY, et al., Defendants.

Civil Action No. 05–CV–4422.

United States District Court, E.D. Pennsylvania.

May 16, 2007.

586

Alan K. Cotler, Jeremy R. Berger, Michael William King, Reed Smith LLP, Philadelphia, PA, for Plaintiff.

Helena I. Poch Ciechanowski, Nolan N. Atkinson, Jr., Duane Morris, LLP, Philadelphia, PA, for Defendants.

### AMENDED MEMORANDUM AND ORDER[1]

ANITA B. BRODY, District Judge.

Plaintiff Donald Stewart alleges that he was wrongfully evicted from his housing unit by the Philadelphia Housing Authority ("PHA") and its employees, the locks on his unit were changed, and his personal property was destroyed. Stewart has named as defendants the PHA President Carl Greene, PHA Director of Site Operations Theonita Carter, PHA Unit Manager Elizabeth Outen, and Michelle Jones, a member of PHA management ("individual defendants"), as well as the PHA. Before me is defendants' motion to dismiss.

#### Facts

Stewart is currently incarcerated at State Correctional Institute at Smithfield. He resided during the relevant period at Raymond Rosen Manor, a public housing complex in Philadelphia owned and operated by PHA. Around September 25, 2003, Carter filed a landlord-tenant complaint against Stewart in Philadelphia Municipal Court, seeking to terminate Stewart's lease. Defendants withdrew the complaint on October 15, 2003, and filed no subsequent complaint against Stewart. On October 17, 2003, Stewart learned that defendants had removed his and his family's personal property from his housing unit, without any notice. Carter and Outen told Stewart that he had been evicted because defendants had assumed that Stewart would not return to his unit. Carter and Outen also told Stewart that they "cleaned out" his unit pursuant to PHA policy.

Around October 18, 2003, defendants changed the locks on Stewart's unit. Outen told Stewart that Carter ordered the locks changed because Stewart had been evicted. Locked out of his unit, Stewart sought alternative shelter. On October 31, 2003, Stewart received a letter indicating that he could obtain keys to the vacant tenant council office. The letter indicated that Stewart would not be allowed access to his unit until November 3, 2003, pursuant to orders from Greene. Defendants never returned any of Stewart's personal property, which included family heirlooms, and subsequently destroyed it. Defendants never provided Stewart with an explanation. Stewart attempted to regain possession of his property by filing a grievance in accordance with the PHA grievance process, but he obtained no relief.

In August, 2005 Stewart filed a complaint *pro se* under 42 U.S.C. § 1983 against the individual defendants. Stewart identified them by name and his or her title at PHA and requested reimbursement from PHA. On August 3, 2006, after obtaining counsel, Stewart filed an amended complaint naming the individual defendants as well as the PHA. In his amended complaint, Stewart asserts five claims: (1) violation of the Fourth, Fifth and Fourteenth Amendments under 42 U.S.C. § 1983; (2) conversion; (3) violation of the Pennsylvania Landlord–Tenant Act and Philadelphia Code; (4) intentional infliction of emotional distress; and (5) negligence.

#### Jurisdiction and Standard

Jurisdiction is under 28 U.S.C. §§ 1331 and 1367(a). In deciding a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6), the court must "accept all well-pled allegations of the complaint as true

---

1. This memorandum and order has been amended to correct the statement of the standard for notice under Fed. R. Civ. Proc. 15(c) by changing the word "service" to the word "filing." Other minor changes have been made to comport with this change.

and draw all reasonable inferences in favor of the non-moving party." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 452 (3d Cir.2006).

## Analysis

### A. Claims against PHA

 Defendants move to dismiss all claims against the PHA as time-barred. The statute of limitations for a claim under § 1983 is the same as for a personal injury claim under state law. *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir.1998). In Pennsylvania, the applicable statute of limitations is two years. *Id.* Stewart's claims accrued at the latest in November, 2003, he filed suit against the individual defendants in August, 2005, and he amended his complaint to name the PHA in August, 2006.

#### 1. Rule 15(a)

 For his claims against PHA to be timely, Stewart must first satisfy the standard for leave to amend under Rule 15(a). Under Fed. R. Civ. Proc. 15(a), once a pleading has been served and a response filed, a party may obtain leave to amend its complaint only by "leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Leave to amend generally must be granted unless a party unduly delays in seeking leave or demonstrates bad faith, or unless amendment would be futile. *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir.2006).

 Stewart obtained written consent from the individual defendants to file an amended complaint. Mot. Dismiss, p. 13. Defendants assert that while they stipulated to an amended complaint, they did not stipulate to the addition of PHA and numerous untimely state law claims. *Id.* However, defendants do not demonstrate any prejudice they have suffered due to Stewart's amendments. The record does not support a finding that Stewart unduly delayed in filing an amended complaint, or that he acted in bad-faith. Stewart filed his initial complaint *pro se* and after obtaining counsel promptly filed an amended complaint within a year. Amendment would not be futile because Stewart's amendments add valuable facts and viable claims to his complaint. Defendants noted at oral argument that PHA could not have consented to the amendment because PHA was not named in the original complaint. PHA's inability to consent to an amendment, however, does decide the question of whether Stewart was entitled to leave to amend. Stewart could have sought leave of court to amend his complaint to name PHA and to add new claims—without PHA's consent. Given the absence of prejudice to defendants, the liberality of Rule 15(a), and Stewart's initial *pro se* status, I find that Stewart has satisfied the threshold for leave to amend under Rule 15(a). *Arthur*, 434 F.3d at 206.

#### 2. Rule 15(c)

Stewart must also satisfy the requirements of Rule 15(c). Under Rule 15(c), "an amendment arising out of the same conduct as that alleged in the original complaint will normally 'relate back' to the complaint for the purposes of the statute of limitations." *Arthur*, 434 F.3d at 202. Rule 15(c) states:

> An amendment of a pleading relates back to the date of the original pleading when ... (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of

the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed. R. Civ. Proc. 15(c).

■■ Rule 15(c)(2) requires only that the amended pleadings share with the original pleading a "common core of operative facts." *USX Corp. v. Barnhart,* 395 F.3d 161, 167 (3d Cir.2004). In his original pleading, Stewart alleges similar facts surrounding his eviction, the changing of his locks, and the destruction of his property, all occurring around dates similar to those alleged in his amended complaint. Stewart's claims against PHA therefore arise out of the same "conduct, transaction, and occurrences" alleged in his original pleading, in satisfaction of Rule 15(c)(2).[2]

■ Rule 15(c) (3)(A) permits amendments adding a party where the added party had notice of the action within 120 days of the filing of the original complaint, and the newly named party would not be prejudiced. Courts have found adequate notice and a lack of prejudice where the newly named party shares the same attorneys as, and has an identity of interests with, the existing parties. *Smith v. City of Phila.,* 363 F.Supp.2d 795, 801 (E.D.Pa. 2005) (discussing the "identity of interests" and "shared attorney" tests). Parties share an identity of interest where they are "so closely related in their business

operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." 6A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 1499, p. 146 (2d ed.1990). In *Smith,* this Court determined that a civil rights plaintiff alleging excessive force by the Philadelphia Police Department properly replaced "John Does" with the parties' real names because the newly named parties held supervisory positions in the police department, such that they had a "sufficient nexus" with the existing defendants, and because the newly named and existing parties shared an attorney. *Id.* at 801.

■ In this case, both the identity of interests and shared attorney tests support the conclusion that PHA had adequate notice and would not be prejudiced. First, some of the individual defendants work for PHA in supervisory capacities and presumably are involved in the day-to-day operations of PHA. Stewart's original complaint alleged a close relationship among defendants and PHA. Pl.'s Opp., Ex. A. For example, Stewart identified each of the individual defendants by their name and their title at the PHA, underscoring PHA's involvement in the conduct of the individual defendants. *Id.* Stewart also requested reimbursement for his destroyed property from the PHA. *Id.* Like the newly added police officers in *Smith,* the PHA has a sufficient nexus with its high-level officers, such as defendant Greene, to ensure PHA's identity of interest with some of the individual defendants.

**2.** At oral argument, defendants contended that Stewart's claim challenging an alleged policy, practice or custom of PHA does not arise out of the same factual core as his allegations in his original complaint. Although Stewart's policy-based claim expands the litigation beyond the isolated incidents initially alleged, it is obvious that his challenge to PHA's policies arises out of the same eviction and loss of property that he alleged in his original complaint.

Second, all defendants share an attorney.[3] Attorney Nolan Atkinson represented the individual defendants at the time Stewart filed his original complaint, and Mr. Atkinson represents PHA in the current action. Any communications from Mr. Atkinson to the individual defendants in their official capacities are tantamount to communications to the PHA itself. Under Pennsylvania law, service of process on PHA would be accomplished necessarily by serving a high-level officer, such as defendant Greene.[4] This suggests that PHA had knowledge of Stewart's suit as soon as Stewart's original complaint was served on the individual defendants. Accordingly, the PHA had more than adequate notice of Stewart's law suit within 120 days of filing of the original complaint, and PHA would not be prejudiced by having to defend this suit now.

■ Finally, Rule 15(c)(3)(B) requires that the newly named party knew or should have known that it would have been named, but for plaintiff's mistake. Third Circuit law establishes that a "mistake" *regarding a defendant's identity may encompass the plaintiff's inadequate knowledge concerning the party, not merely misnomers or misidentifications. Arthur,* 434 F.3d at 208. In *Arthur,* a merchant seaman injured while working on naval ships sued his employers and later sought to name the United States once he learned that the United States owned the ships in question, and that his employers were statutorily immune. *Id.* at 199–200. The Third Circuit ruled that plaintiff's amendment naming the United States as a defendant related back to his original complaint and was timely. *Id.* at 209. "An amendment naming a new party will relate back to the original complaint if the party had

adequate notice of the action and should have known that it would have been named in the complaint but for a mistake—whether the mistake is based on lack of knowledge or mere misnomer." *Id.* The United States should have known it would have been named because there was "no basis to characterize Arthur's decision to sue his statutorily immune employers as litigation strategy ...." *Id.* Thus, the "mistake" prong of Rule 15(c) permits amendments that simply cure errors in legal judgment. *See, e.g., Advanced Power Sys., Inc. v. Hi–Tech Sys., Inc.,* 801 F.Supp. 1450, 1457 (E.D.Pa.1992) (Pollak, J.) ("mistake" inquiry centered on whether the new party was aware that failure to join it was error rather than deliberate strategy); *Taliferro v. Costello,* 467 F.Supp. 33, 36 (E.D.Pa. 1979) (Pollak, J.) (civil rights plaintiffs' claim against City of Philadelphia related back to original complaint, even though plaintiffs' initial failure to name the City had resulted from mistaken legal judgment, as plaintiffs had filed original complaint *pro se* ).

■ In this case, Stewart knew PHA existed and knew its name, as evidenced by his repeated references to PHA in his original complaint. Pl.'s Opp., Ex. A. At oral argument, defendants contended that Stewart's obvious knowledge of PHA's existence precluded a finding that he lacked knowledge sufficient to name PHA earlier. This contention overlooks the likelihood that Stewart, a *pro se* plaintiff, made a mistake in legal judgment, and that he simply may not have known that PHA could have or should have been named. Given the close relationship between PHA and the individual defendants, PHA should have recognized that Stewart's failure to

---

3. Defendants conceded this point at oral argument.

4. *See* Pa. R. Civ. Proc. 422 (service on political subdivisions), Rule 424 (service on corporations or similar entities).

name PHA was simply a mistake. *See Advanced Power Sys.*, 801 F.Supp. at 1457 (failure to join new party at earlier time was more "immediately recognizable as error" when new and existing parties are closely connected). All of this supports the conclusion that Stewart properly named PHA in his amended complaint.[5]

## B. State law claims

■ Defendants also move to dismiss the state law claims of conversion, negligence, intentional infliction of emotional distress, and violation of Pennsylvania's Landlord–Tenant Act against all defendants on statute of limitations grounds. As discussed above, Rule 15(c)(2) requires only that the new claims arise out of the same "conduct, transaction or occurrences." Fed. R. Civ. Proc. 15(c)(2). Stewart's state law claims for conversion, negligence, intentional infliction of emotional distress, and violation of Pennsylvania's Landlord–Tenant Act surely arise out of the very eviction, lock change, and property destruction that Stewart challenged via § 1983 in his original pleading. Therefore, these claims relate back to Stewart's original complaint and are not barred by the statute of limitations.[6] *See* 6A Wright, *supra* § 1497, pp. 94–95 ("The fact that

an amendment changes the legal theory on which the action initially was brought is of no consequence if the factual situation upon which the action depends remains the same . . . .").

## C. Defendants' personal involvement

■ Defendants also move to dismiss Stewart's claims against defendants Greene and Jones for failing to plead their personal involvement in the alleged wrongs. A defendant in a civil rights action must be personally involved in the alleged wrongs, as there is no *respondeat superior* liability under § 1983. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt*, 451 U.S. at 537 n. 3, 101 S.Ct. 1908). A plaintiff may satisfy the personal involvement requirement by alleging with particularity the defendants' personal direction of, actual knowledge of, or acquiescence in the challenged conduct. *Id.*

■ Stewart alleges that Greene ordered, by letter, that Stewart not be permitted to re-enter or occupy his unit, thus continuing the eviction.[7] He alleges that all the defendants acted to deprive him of his constitutional rights, deliberately violated federal law, and acted under color of state law, and pursuant to a custom, prac-

---

**5.** Defendants correctly contend that claims against individual employees of PHA in their official capacity would be "redundant" if Stewart is permitted to sue PHA. Mot. Dismiss, pp. 17–18. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (official capacity suit is another way of suing an entity of which the officer is an agent). Stewart concedes this point, and his claims against the individual defendants in their official capacities are dismissed.

**6.** A distinct question is whether Stewart may assert a claim under § 1983 at all based on the facts alleged. The Supreme Court held in *Parratt v. Taylor* that a victim of a "random, unauthorized" deprivation of property by officials acting under color of state law may

resort only to remedies provided by state tort law and has no recourse under § 1983. 451 U.S. 527, 541, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). However, *Parratt* does not apply to deprivations of property effectuated pursuant to a policy, practice or custom. *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–436, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). Because Stewart alleges a deprivation of property pursuant to PHA policy, practice or custom, *Parratt* is no bar to his § 1983 claim.

**7.** At oral argument, the parties noted that the letter was not signed by Greene, but that it appeared on Greene's letterhead.

tice and policy of the PHA, to deprive Stewart of his liberty and property without due process. Stewart specifies the time and place of these incidents. *Rode,* 845 F.2d at 1207–1208. At this stage, Stewart has succeeded in pleading that Greene and Jones knew of and acquiesced in the alleged wrongs sufficiently to survive a motion to dismiss.

**D. Pennsylvania's Landlord–Tenant Act**

 Stewart also asserts a claim under the Pennsylvania Landlord–Tenant Act, 68 P.S. § 250.101, *et. seq.* and Philadelphia Code § 9–1602. § 250.501(a) states:

> A landlord desirous of repossessing real property from a tenant … may notify, in writing, the tenant to remove from the same at the expiration of the time specified in the notice under the following circumstances, namely, (1) Upon the termination of the term of the tenant, (2) or upon forfeiture of the lease for breach of conditions, (3) or upon the failure of the tenant, upon demand, to satisfy any rent reserved and due.

§ 250.501(a) (2006). No Pennsylvania appellate courts have addressed the question of whether a landlord who uses self-help instead of legal process to evict may be liable under this statute. *See Williams v. Guzzardi,* 875 F.2d 46, 53 n. 13 (3d Cir. 1989) (availability of self-help remedy under Pennsylvania law ambiguous in wake of Landlord–Tenant Act). The Pennsylvania Superior Court has noted that other jurisdictions recognize a cause of action for trespass arising out of a landlord's use of self-help. *Kuriger v. Cramer,* 345 Pa.Super. 595, 498 A.2d 1331, 1337 n. 14 (1985) (District of Columbia and Delaware recognize tort arising out of landlord's use of self-help). And several of the Courts of

Common Pleas have disapproved of self-help. *See, e.g., Lenair v. Campbell,* 31 Pa. D. & C.3d. 237, 241–242 (Pa.Com.1984) (self-help unlawful in wake of Landlord–Tenant Act); *Wofford v. Vavreck,* 22 Pa. D & C.3d 444, 449–451 (Pa.Com.1981) (self-help unlawful for public policy reasons); *Perley v. Fannelli,* 1 Pa. D. & C.3d 496, 497 (Del.Co.1976) (permitting cause of action based on Landlord–Tenant Act to survive preliminary objections). As a result, I predict that the Pennsylvania Supreme Court will recognize a cause of action for trespass under Pennsylvania Landlord–Tenant Act.[8]

**E. Punitive Damages**

 Defendants move to dismiss Stewart's claim for punitive damages against the PHA. It is well-established that punitive damages are not available against a municipal defendant in a civil rights action. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 266, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Plaintiff conceded this point at oral argument, and the claim for punitive damages against the PHA is dismissed.

### *ORDER*

**AND NOW,** this 16th day of May 2007, it is **ORDERED** that defendants' motion to dismiss (Doc. # 32) is **GRANTED** in part and **DENIED** in part, without prejudice to defendants to reassert their contentions at summary judgment. Plaintiff's claims against the individual defendants in their official capacities, his claim for punitive damages against PHA, and his claim under the Philadelphia Code are dismissed with prejudice.

---

**8.** As defendants note, this Court is not the appropriate forum for enforcing the Philadelphia Code. *See* Phila. Code § 9–1606. Plain-

tiff conceded this point at oral argument. To the extent that Stewart's claim relies on the Philadelphia Code, it is dismissed.