**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1229
_____

VICKIE JOY FETTERMAN,
Administratrix of the Estate of Natalee Kay Mibroda, a minor decedent,
                                                              Appellant

v.

WESTMORELAND COUNTY CHILDRENS BUREAU;
WESTMORELAND COUNTY; DEANNA SUPANCIC, individually and as
an employee of Westmoreland County Children's Bureau;
SHANNON HAYWOOD, individually and as a supervisor
of Westmoreland County Children's Bureau; CLAYTON MIBRODA;
KAYLA JO LICHTENFELS; BETTY JO LICHTENFELS

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D. C. Civil Action No. 2-15-cv-00773)
District Judge:  Honorable Terrence F. McVerry

_____

Submitted under Third Circuit LAR 34.1(a)
on October 7, 2016

Before:  SHWARTZ, COWEN and ROTH, <u>Circuit Judges</u>

(Opinion filed: March 6, 2017)

ROTH, <u>Circuit Judge</u>

Vicki Joy Fetterman appeals the District Court's order dismissing her Amended Complaint with prejudice. For the reasons set forth below, we will affirm.

I.

The facts underlying this matter are complicated, and involve the tragic death of Fetterman's granddaughter Natalee. Natalee was born on December 7, 2011, six weeks premature and with a severe opiate addiction as a result of her mother Kayla Jo's chronic drug use during pregnancy. Because of Natalee's addiction, the hospital sent a social worker to conduct a safety investigation at Kayla Jo's residence. The investigation concluded that Natalee would be at risk because Kayla Jo and Natalee's father Clayton "cannot or will not control their behavior." Despite being advised of these findings, the Westmoreland County Children's Bureau (WCCB) took no action, and Natalee was released into her parents' custody on December 9, 2011. The next day, Kayla Jo gave Natalee to Fetterman, although no formal legal guardianship was established. Three days later on December 12, defendant Deanna Supancic visited the residence of Kayla Jo and Clayton in her capacity as a case worker with WCCB. During this visit, she learned that Clayton was on probation, that there were previous reports of domestic violence

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

involving Kayla Jo and Clayton, and that Indiana County Children and Youth Services (ICCYS) had previously investigated Kayla Jo and Clayton about their other child, Caden.

An ICCYS case worker visited Fetterman on December 13 and instructed Fetterman not to return Natalee to Kayla Jo and Clayton. The ICCYS caseworker expressed concern to Supancic that same day, noting that "risk may be higher if child was with natural parents." These concerns were echoed by Fetterman who called and left numerous messages for Supancic and her supervisor, defendant Shannon Haywood, expressing concern that Natalee would be at risk if returned to Kayla Jo and Clayton. Although Supancic did not return these calls, she made notes of these concerns in her files. In addition, Natalee's pediatrician called and spoke with both Supancic and Haywood and voiced his concerns about Natalee's health and safety. On December 15, 2011, Supancic directed Fetterman to return Natalee to Kayla Jo and Clayton, which Fetterman did that evening.

WCCB made no efforts to check in on Natalee immediately after her return to her parents, despite numerous concerned calls from Fetterman. Twelve days later, on December 27, Natalee died as a result of multifocal blunt force head trauma which resulted in subdural and bilateral hemorrhaging. The autopsy also revealed numerous broken bones and other injuries.

Fetterman commenced the instant suit against WCCB[1] on May 28, 2015, and

---

[1] The original complaint also included claims against Kayla Jo and Clayton, and against Natalee's other grandmother. Those claims were subsequently remanded to state court.

3

amended her complaint to add Haywood, Supancic, and the County as defendants on September 10, 2015. On January 6, 2016, upon the defendants' motion, the District Court dismissed the suit against Haywood and Supancic as untimely, and determined that the Supreme Court's decision in *DeShaney v. Winnebago County Department of Social Services*[2] precluded recovery against the County. This appeal followed.

## II.[3]

Fetterman appeals both rulings of the District Court, arguing that the Amended Complaint "relates back" to the original complaint under Rule 15 of the Federal Rules of Civil Procedure and that *DeShaney* is not controlling here because WCCB's conduct constituted a "state-created danger." Both arguments are addressed below.

## A.

We first address whether the District Court erred in finding the Amended Complaint untimely with respect to Supancic and Haywood. In Pennsylvania, the statute of limitations for claims brought pursuant to 42 U.S.C. § 1983 is two years, which begins running when the plaintiff suffers an injury.[4] In order to add new parties to a timely commenced action outside of this limitations period, an amended pleading must "relate back" to the original pleading under Rule 15(c) of the Federal Rules of Civil Procedure.[5] An amended pleading that adds a new party "relates back" where, among other

---

[2] 489 U.S. 189 (1989).
[3] The District Court had jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367. We have jurisdiction of this appeal pursuant to 28 U.S.C. § 1291. We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6). *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013).
[4] *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009).
[5] *Arthur v. Maersk, Inc.*, 434 F.3d 196, 207 (3d Cir. 2006)

4

requirements, "the party to be brought in by amendment . . . knew or should have known that the action would have been brought against it, *'but for a mistake concerning the proper party's identity.'"*[6]

The core of Rule 15's relation back inquiry is "what the prospective *defendant* knew or should have known" after the initial pleading was filed.[7] Thus, where a plaintiff "plainly indicate[s] such a misunderstanding [as to the newly added defendant's identity or role]," an amended pleading may relate back for statute of limitations purposes.[8] On the other hand, a plaintiff who "mak[es] a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties" will be barred from asserting her claims against the new defendant.[9]

Here, the District Court found that the Amended Complaint did not adequately relate back under Rule 15 with respect to defendants Supancic and Haywood. Specifically, it noted that Fetterman's original complaint alleged substantially all of Supancic and Haywood's conduct, yet failed to include them as defendants. In the absence of any evidence that Fetterman made a mistake as to the legal or factual circumstances surrounding Supancic and Haywood's involvement in Natalee's death, the District Court drew the reasonable inference that Fetterman made the conscious decision to only sue WCCB.

---

[6] *Id.* (quoting FED. R. CIV. P. 15(c)) (emphasis added).

[7] *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010) (emphasis in original).

[8] *Id.* at 555.

[9] *Id.* at 549; *accord Garvin v. City of Philadelphia*, 354 F.3d 215, 221-22 (3d Cir. 2003) ("Of course, an amended complaint will not relate back if the plaintiff had been aware of the identity of the newly named parties when she filed her original complaint and simply chose not to sue them at that time.").

5

Fetterman argues on appeal that she made no such deliberate choice, but alleges no facts indicating that the failure to include Supancic and Haywood in the initial complaint was the result of a mistake as to identity. In the continued absence of any evidence that Fetterman was operating under a mistaken factual or legal premise at the time she filed the initial complaint, we will affirm the District Court's finding that the Amended Complaint does not relate back with respect to Supancic and Haywood.[10]

B.

We turn next to whether the District Court erred in treating *DeShaney v. Winnebago County Department of Social Services* as controlling. In *DeShaney*, the mother of a child who was repeatedly abused by his father for years brought suit against the municipal social services agency, alleging that the municipality's failure to respond to numerous reports of abuse from neighbors, family members, and doctors violated the child's due process rights. In rejecting the mother's claims, the Supreme Court held that, as a general matter, the Fourteenth Amendment imposes no affirmative obligation on states to intervene to protect private citizens from private violence.[11] A narrow exception to this general rule does exist, however, under the "state-created danger" theory, which allows a claim to proceed "when the state acts in a way that makes a person substantially

---

[10] Fetterman dedicates a large portion of her briefing to the question of whether Supancic and Haywood had constructive notice of the initial complaint. However, the question of notice is entirely separate from that of whether the failure to include a party was the result of a mistake. *See Arthur*, 434 F.3d at 207 (noting that the "notice" and "mistake" requirements are separate for Rule 15 purposes). Because we affirm the District Court's analysis as to the "mistake" element, we need not determine whether any of Fetterman's arguments about notice have merit.

[11] 489 U.S. at 196-97.

6

more vulnerable to injury from another source than he or she would have been in the absence of the state intervention."[12]  To make out a case for such liability, a plaintiff must establish:  (1) the harm suffered was foreseeable and fairly direct, (2) a state actor acted with a degree of culpability that "shocks the conscience", (3) the existence of a special relationship between the state and the victim, and (4) the affirmative use of authority in a way that created the danger or made the victim more vulnerable to danger.[13]

The District Court found no meaningful distinction between the instant case and *DeShaney*, holding that Fetterman had failed to allege any affirmative exercise of authority by WCCB or the County which "shocks the conscience."  We agree.  Fetterman alleges that WCCB and the County failed to respond to numerous complaints and reports explaining the danger that Natalee faced with her parents.  Fetterman also alleges that Supancic affirmatively ordered Fetterman to return Natalee to her parents.  These actions clearly do not shock the conscience; indeed, they do not even rise to the level of the municipality's conduct in *DeShaney*, which the Supreme Court characterized as merely negligent.[14]  In *DeShaney*, the county ignored numerous reports of *actual* abuse— compared to the mere *risk* of abuse at issue here—and affirmatively exercised its authority to return the child to his abusive father even after a court order for the child's removal from the home.  In the absence of more egregious conduct on the part of the County or WCCB, we will affirm the District Court's determination that *DeShaney* is

---

[12] *Schieber v. City of Philadelphia*, 320 F.3d 409, 416 (3d Cir. 2003).
[13] *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006).
[14] *DeShaney*, 489 U.S. at 203 ("The most that can be said of the state functionaries in this case is that they stood by and did nothing when suspicious circumstances dictated a more active role for them.").

7

controlling and that the state-created danger exception does not apply.

### III.

While we are sympathetic to the horrible circumstances surrounding Fetterman's loss, we are not free to ignore clear, binding precedent from the Supreme Court of the United States even in such emotionally charged cases. Because we find that the District Court correctly applied Rule 15 to dismiss defendants Supancic and Haywood, and properly treated *DeShaney* as controlling to dismiss WCCB and the County, we will affirm the judgment of the District Court.